## C. W. EAST v. THE STATE.

No. 22326. Delivered December 16, 1942.
Rehearing Denied December 8, 1943.

GRAVES, Judge, dissenting on motion for rehearing.

The opinion states the case.

*E. T. Miller* and *Cleo G. Clayton, Jr.,* both of Amarillo, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This prosecution arose under Art. 1540, P. C., which makes an officer of court guilty as for theft who fraudulently converts to his own use funds coming into his possession by reason of his office. The punishment assessed is five years in the State penitentiary.

The indictment charged, in effect, that appellant was an officer of court in that he was a receiver in a certain suit pending in the 108th Judicial District Court of Potter County, and that there came into his possession, by virtue of such office, the sum of ten thousand dollars, which he fraudulently converted to his own use.

The facts show that there was pending, in the above named court, a suit to foreclose certain liens upon the Melrose Apartments in the City of Amarillo. Appellant was duly appointed receiver of said property, pending final determination of the suit; and, on the 18th day of August, 1933, he qualified as such receiver by taking the oath and by giving the required bond for the faithful performance of his duties.

The order of the court appointing the receiver authorized among other things: (a) to demand, collect and receive all rents for the property; (b) to rent any part of the premises; (c) to keep the building in repair and insured; (d) to pay all expenses necessary or incident to the management of the property; (e) to secure a resident manager for the premises; and (f) to retain possession of the revenues derived pending final determination of the suit.

The receivership continued for a period of approximately five years, or until the 5th day of July, 1938, when it was terminated by a sale of the property under the judgment of the court.

Thereafter, one of the attorneys called upon appellant for a final report as receiver; in consequence of which appellant delivered to the attorney, what he termed and represented to be, his final report. It consisted of a statement showing the monthly receipts and disbursements throughout the entire period of the receivership. The names of the parties from whom receipts were received, as well as those to whom payments were made, were set forth. This account or report was not signed by the appellant nor was it in any manner attested by him. The appellant did, however; represent and state to the attorney to whom it was delivered that it was true and that it correctly reflected the receipts and disbursements. The account showed that appellant had received $17,782.20 more than he paid out. In other words, he was short that amount. Appellant freely admitted such fact, both orally and in writing. His only explanation was that he had spent the money and could not make payment thereof into court.

The attorney to whom the account was delivered filed same in the court and denominated it the receiver's final report.

On the 2nd day of September, 1938, an order was entered approving the receiver's final report, in which order it was found that the appellant had the sum above mentioned, which he was directed to apply to the payment, first, of the court costs, then to a fee of $4,700.00, allowed the receiver for his services, and the balance to the payment of other items of indebtedness, including taxes, as set forth in the order.

The judge of the court in which the proceedings were instituted and finally determined testified, upon the trial of this case particularly with reference to the approval of the final report. The effect of his testimony was that the order of approval was entered, alone, upon the unsigned and unattested account or report, as filed and presented by the attorney to whom it was delivered by the appellant. No evidence appears to have been introduced establishing the correctness of the report. The appellant did not testify at the hearing, nor did he appear in court, or before the judge, in connection therewith. In fact, the judge testified that he had never talked with appellant relative the report.

There was proof that appellant did not pay any of the items listed for payment in the order approving the final report. There was proof also that, during the period of the receivership, the apartment was at all times reasonably well filled with

tenants. The witness attesting this fact was unable to say that any tenant had ever paid the appellant any rental money.

This constitutes a sufficient statement of the facts.

The appellant did not testify as a witness in his own behalf.

In submitting this case to the jury, the trial court applied the three-year statute of limitation and authorized a consideration by the jury of such funds or moneys which came into the hands of appellant within the three-year period prior to the 28th day of June, 1940—the date on which the indictment was filed.

According to the account or final report, the amount received by appellant over and above the disbursements, during this three-year period, exceeded the sum of six thousand dollars, and was some fifteen hundred dollars in excess of the fee of $4,700.00 allowed the appellant as receiver.

The sufficiency of the evidence to support the conviction is challenged. This presents a troublesome question.

It is insisted that the facts are insufficient to establish the "corpus delicti," in that the fact that a crime was committed, as well as appellant's guilty connection therewith, are shown, solely and alone, by the uncorroborated and unsupported extra-judicial statements, acts, declarations, and admissions of the appellant.

The term "corpus delicti," in its broad sense, means proof that a crime has been committed by someone. Before a conviction can be had on a criminal charge, the prosecution must show the "corpus delicti," and that the accused was criminally connected therewith. Wharton's Criminal Law, 12th Ed., Vol. 1, Secs. 347-348.

It has long been the established rule of law in this State that the "corpus delicti" cannot be proved, alone, by the extra-judicial confessions or admissions of the accused; there must be corroborating circumstances. The authorities attesting this rule are numerous and will be found collated in 11 Texas Digest, Sec. 535, P. 836. The wisdom of this rule lies in the fact that no man should be convicted of a crime, the commission of which he confesses, unless the State shows, by other testimony, that the confessed crime was in fact committed by someone. The

contrary would authorize a return of conditions that existed in the days of the inquisition.

In the instant case, the "corpus delicti" lies in the proof of the fact that (a) the appellant was the receiver, and was, therefore, an officer of the court; (b) money came into his hands by reason of the fact that he was such receiver; and (c) he fraudulently converted such money to his own use. Such facts are all established, primarily, by the extrajudicial admissions of the appellant, and by his acts and declarations, and which show his guilt of the offense charged.

The material inquiry here presented, therefore, is whether there are facts or circumstances which corroborate the appellant's admissions. That appellant was the receiver, as charged, is abundantly shown by other testimony. We look now for the corroboration showing that, as a result of the receivership, funds or money came into appellant's hands. There is no direct testimony to so show. Notwithstanding the fact that the report gave the names of the parties from whom appellant said he received rent, none were called to testify to such fact. Outside of appellant's admissions in evidence, the only fact or circumstance by which it may be said that appellant came into possession of money or funds as a result of the receivership lies in proof of the fact that appellant did assume the care, control, and management of the property, and that it was occupied by tenants throughout the period of his connection therewith. Do such facts show that such tenants paid rent to the appellant, or do they merely raise a presumption of such fact? If it be a presumption only, then such is insufficient, because the law recognizes presumptions against an accused in a criminal case when they arise as a matter of law, or by statute, in which event they become presumptions of law. Presumptions of fact are never indulged against an accused. 18 Tex. Jur., P. 116; Lott v. State, 17 Tex. App. 598.

For a solution to this remaining question, we look to the following adjudicated cases:

The case of Cokeley v. State, 220 S. W. 1099, 87 Tex. Cr. R. 256, was one of rape upon an insane person. The accused confessed the crime. Because of the allegation of insanity, the State was unable to use the prosecutrix as a witness. There was proof that, on more than one occasion, the accused was seen at the home of the prosecutrix, at which times he could have engaged in sexual relations with the prosecutrix, proof of which was necessary to the establishment of the State's case. It was held

that such facts were insufficient to so show, or to establish, the "corpus delicti."

The case of Duncan v. State, 7 S. W. (2d) 79, 109 Tex. Cr. R. 668, was one of arson. The accused confessed that he burned the house. Other than this confession, the State showed only that the building burned. This was held to be insufficient to corroborate the confession so as to establish the "corpus delicti," it being held that, in order to constitute the offense of arson, the building must be set afire and burned as a result of the willful act of someone.

Other cases might be mentioned, but these are deemed sufficient to support the statement that evidence showing merely that an accused was in position to have committed the offense charged, or that the offense might have been committed by him, is insufficient to constitute the necessary corroboration of a confession establishing the "corpus delicti."

In the instant case, the corroborating circumstances, and especially those with reference to the receipt by appellant of rent money, show nothing more than that he was in position to receive and to collect the rents. A situation similar in legal effect existed in the Cokeley case, supra, where the accused was shown to have been in position to commit the rape charged. Such fact was held insufficient to corroborate the confession so as to show that the offense of rape had in fact been committed.

That the tenants occupying the apartment house paid rent to appellant is a reasonable deduction from the facts here presented. A deduction similar in legal significance could have been indulged in the Duncan case, supra, to the effect that the building was in fact burned by someone; yet such fact was held insufficient to corroborate the confession of the accused, in that case, that he burned the building.

The conclusion to be drawn from these cases is that, in a criminal case, proof of that which might have happened under a given state of facts does not warrant the conclusion that it did in fact so happen.

From what has been said, the conclusion is reached that, in the instant case, the State has failed to establish the "corpus delicti" in that, outside of appellant's extrajudicial admissions, acts, and declarations, there is no testimony corroborating the fact that the appellant did receive, and that there came into his possession, money or funds as a result of the receivership.

In view of another trial, we deem it advisable to discuss the following additional questions, presented for review:

The trial court did not err in holding that there was no variance between the style of the suit as described in the indictment and that shown by some of the evidence. The clerk of the court attested the fact that the suit was docketed in court under the style as alleged in the indictment. That the names of some of the parties to the suit did not correctly appear in the style of the case was immaterial, and proof of such fact did not constitute a variance. The State was warranted in describing the suit as same appeared on the docket of the court.

Appellant's contention that a receiver, as in this case, is not an officer of court, within the meaning of Art. 1540, P. C., was correctly overruled. Receivers are appointed by, derive their powers from, and act under the supervision of, the court appointing them. They are, therefore, officers of the court. Arts. 2293 and 2297, R. C. S.; Ex parte Britton, 92 S. W. (2d) 224, 127 Tex. 85; 36 Tex. Jur., pp. 9, 10, and 11.

Because of the insufficiency of the evidence to support the conviction, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The question presented in the State's motion for rehearing is whether we were in error in holding originally that the evidence was insufficient to establish the corpus delicti.

For a fair condensed restatement of the facts we are indebted to our State's Attorney, the Hon. Spurgeon Bell, and quote from his brief upon the State's motion as follows:

"* * * The appellant was appointed receiver by the 108 District Court of Potter County on the 18th of August, 1933. On that date he took the oath as receiver and filed a bond. He continued to act as receiver until 1938, his final report being made and approved on the 2nd of September, 1938. The indictment alleges this last date as the date upon which appellant fraudulently ap-

propriated funds that had come into his hands as receiver to his own use. Touching the proof of the corpus delicti, it is to be noted that the final report made by the receiver and approved by the court showed that he had taken into his possession as receiver some $38,000 and also showed that he had received some $17,782.20 more than he had paid out. Also, various letters were written by the appellant in which he had admitted his shortage, and in which he had admitted that he could be sent to the penitentiary, and also he made various statements to the same effect. This report and these statements constitute an extrajudicial admission on the part of the appellant which absolutely establishes the crime. We have tried to find authorities establishing that the receiver's report would constitute a judicial confession but we are convinced that it does not. All of the authorities seem to hold that a judicial confession is a confession taken in open court at a criminal prosecution and in connection with the crime with which a person is being tried. The question then arises as to what facts exist outside of the confession or admission that establish the corpus delicti. In this connection it should be remembered that the report covers a period from the time of the appointment of the receiver in 1933 to the date of the final report, to-wit, September 2, 1938. The indictment was returned June 28, 1940, and since the three-year statute of limitation applies, the State must rely upon acts occurring within three years of the date of the indictment. They can not go back of June 27, 1937.

"Outside of the report we have certain items of testimony showing that money, as receiver, came into the hands of the appellant. Mr. Isaac Heller testified that the only thing that the bond holders got was a part of the $2,000.00 which was paid by the bonding company. The bonding company became liable upon its bond which it had written for Mr. East and they paid this $2,000.00, which was prorated among the interested parties in the judgment against East (S. F. 44). It is also established by the further testimony of Mr. Heller that certain taxes were paid off by the receiver from money that he had collected and also some paving liens were paid (S. F. 56-57). These seem to be the only two items of testimony which show money coming into the hands of the receiver. The dates upon which these were received is not shown. In reading the statement of facts, all of the taxes that were paid, according to the report, were paid before June, 1937, and the orders made for the payment of paving liens were before that date. See Statement of Facts, 194, 208, 210, 213, 214, 215, 238, 239, 243. Of course, from this it is not definitely established that the money

which was appropriated by Mr. East was appropriated after June, 1937. In fact it does not show that the money was appropriated, because the money was applied to the payment of some indebtedness against the estate. However, it does have the effect of showing that at some time, while as receiver he received money in his capacity as such. It has the effect of corroborating in some details the extrajudicial confession or admissions made by the appellant. * * *"

The State takes the position that the necessary corroboration of appellant's confession and admissions is met by the evidence referred to in the foregoing statement of the facts, and cites Mills v. State, 123 Tex. Cr. R. 395, 59 S. W. (2d) 147, in support of its contention. If the Mills case be accepted as sound in all particulars we could justly predicate an affirmance of the present case thereon if it were not for the fact that in the Mills case no question of limitation arose such as we find here present, hence the opinion there falls short of solving the question of corroboration under the facts of the present case.

The troublesome question for the State was that it failed to show by any corroborating evidence that money collected by appellant was appropriated within the period of limitation; nor did it show that any moneys were collected by appellant within the period of limitation other than by the extra-judicial confession (that is, the report of the receiver) and his extra-judicial admissions.

For the reasons stated we conclude that the State's motion for rehearing should be overruled, and it is so ordered.

GRAVES, Judge (dissenting on rehearing).

The State has filed a motion for a rehearing, claiming that our original opinion herein is in error in that it is there held that the State in this case had failed to establish the corpus delicti; that is, that the State had failed to show, outside of the confession, that an offense against the law has been committed.

The general doctrine is laid down that an extrajudicial confession can be utilized, however, in aid of the establishment of an offense against the law, and we are cited to many cases thus holding, chief among them being the Kugadt case, 44 S. W. 989, 38 Tex. Cr. R. 694, wherein it is said: "In other words, in the establishment of the corpus delicti the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. See note 3 to case of State v.

Williams, reported in 78 Am. Dec., p. 254. And this rule is recognized in this State. See Jackson v. State, 29 Texas Crim. App. 458. Said case quotes with approval an excerpt taken from 4 American and English Encyclopedia of Law, p. 309, as follows: 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a reasonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused. "Full proof of the body of the crime, the corpus delicti, independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient".' 3 Am. and Eng. Enc. of Law, p. 447. We take it that there can be no question that the prosecution is permitted to prove by circumstantial evidence the corpus delicti, and in aid thereto use confession of the appellant."

Again, it is said in Kincaid v. State, 97 S. W. (2d) 175: "In many of the cases on the point under discussion appear statements to the effect that a bald confession, without other circumstances to sustain it, will not suffice; or that the naked confession of one accused, will not be enough; but none of the cases attempt to lay down any arbitrary rule, and the substance of their holdings is that it is only necessary that there be other facts and circumstances in evidence strengthening and confirming the fact that a crime has been committed with which the accused identifies himself by his confession."

Again, we said in Harris v. State, 64 Tex. Cr. R. 594, 144, S. W. 232, that: "It is true that this court has held, and it is well established, that a confession alone in and of itself, is insufficient to support a conviction in a case of this character, or any other. It is needless to cite the authorities to that effect because they are uniform. But it is as firmly established by the decisions of this court that the confession may be used to aid the proof of the corpus delicti, and if all of it together is sufficient to satisfy a jury of the truth of the charge beyond a reasonable doubt, the conviction must be sustained (this upon citation of many authorities)."

It is also said in Lott v. State, 60 Tex. Cr. R. 166, that: "Again, an extrajudicial confession standing alone is not sufficient proof of the corpus delicti. But a confession is sufficient

if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction in the minds of the jury beyond a reasonable doubt."

Again, in the early case of Jackson v. State, 29 Tex. Ct. App. 464, we find the following:

"A confession is sufficient if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of defendant's guilt in the minds of a jury, beyond a reasonable doubt. 4 Am. and Eng. Ency. of Law, p. 309.

" 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstance therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury rendering a verdict asserting the guilt of the accused. Full proof of the body of the crime, the corpus delicti, independently of the confession, is not required by any of the cases, and in many of them slight corroborating facts were held sufficient.' See the cases cited and collated in 3 American and English Encyclopedia of Law, p. 447."

We find the case of Mills v. State, 59 S. W. (2d) 147, a case of similar import to the present one to some extent. In that case Arthur Mills was the tax collector of McLennan County, and, according to reports rendered by him, he was short in his accounts with the county. The accused admitted that he owed the county about $40,000.00 and was making arrangements to pay the same. It was also shown that a portion of this money was paid into the county treasury by a surety company. It was also shown that Mills admitted to a newspaper reporter that he owed the county about $40,000.00. This court held that such facts were sufficient to establish the corpus delicti, when taken in connection with the accused's confession. It was also therein held that such confession was not an extrajudicial confession, such being required to be made as a matter of law.

Let us draw an analogy of the Mills case with the present one:

Appellant was an officer of the court, see Art. 2293, R. C. S. 1925; he shall take the oath and give bond, Art. 2296, R. C. S.; he shall have certain powers, and carry out the orders of the court appointing him, Art. 2297, R. C. S., and shall per-

form certain duties as provided by law, as well as carry out the orders of the court; he shall sue and be sued as such.

In the present case, appellant as an officer of the court had charge of these apartments for about five years; he took in large sums of money and paid out large sums. Upon a final report of his activities being called for, he prepared a report of receipts and disbursements, although not signed by him, and delivered same to an attorney; he told the attorney that the report showed that appellant owed the estate about $17,000.00 and that he had spent such money, thus evidencing the fact that he was short that amount. The full report is in the record, having been introduced, and evidently shows such a shortage. In approving this report, the trial court in the receivership ordered certain amounts to be paid into that court; it is shown that such was not done by appellant; it is shown by the report, as well as by others, that about $6,500.00 was paid as taxes by appellant, and such payment was set forth in the report of receiver, thus corroborating a portion of the report. It is also shown by a letter addressed to one of the owners of the apartments and signed by appellant, in which appellant admits his indebtedness to the owners of the apartments, and offers to pay the sum of $3,000.00 and to give promissory notes for the balance. In such letter he reiterates the statement that his report is correct to a penny. He then sets forth the proposition that if the owners do not accept the proposition above set forth, then they will only receive $2,000.00 cash from the surety company on his bond, and will lose the remainder, and only have appellant behind the bars, where he can not pay them the amount due, according to this report.

It was laid down in Mills v. State, 59 S. W. (2d) 149, that: "A jury may be warranted in rendering a verdict of guilty where the circumstances related in a confession correspond in some points with those proven to exist."

The rule relative to a corroboration of a confession is not as strict as that regarding an accomplice, although these rules are sometimes construed to be of similar strictness.

We also said in Kincaid v. State, 97 S. W. (2d) 175, that: "It would hardly be contended that the same rule should be applied to the corroboration of the confession as to the corroboration of an accomplice. By express statute it is made imperative that an accomplice be corroborated by evidence tending of itself to show the guilt of the accused, but we have no such

statute requiring corroboration of the confession. * * * How different the case of a person who confesses his own guilt, and in a sense seeks punishment, not for another, but himself."

Let us see what we have in this case. We have a report coming from appellant showing that he owed this estate the sum of about $17,000.00; portions of the report were shown to have been true; we have him being ordered to pay over certain of these moneys in a certain way; we find him failing to do so, making the statement that he had already spent the money and couldn't pay; we find that such moneys had not been paid; we find him again, admitting that he had utilized such money and could not pay, but offering to pay $3,000.00 thereof, and to evidence the remainder by promissory notes; failing to make this agreement, he predicted his own confinement behind the bars, evidently meaning the prison bars. Under these circumstances I think the two confessions of his recognized wrongdoing have found a sufficient corroboration in the circumstances and proven facts to show that an offense has been committed; that the owners of these apartments had taken from them illegally the sum of $17,782.20, which is the amount shown to be due from appellant by the judgment of the trial court in the civil case No. 9666, in which appellant was a receiver, which report was ordered filed and was approvel by the trial court on September 2, 1938, such report covering about 145 pages in the present statement of facts. I think that the corpus delicti of an offense has been established, and it is apparent that such a shortage existed not only by the report of the receiver but by other proof as well, and that appellant, who had this money in his possession, unlawfully spent the same.

Now in the order overruling the State's motion for rehearing agreed to by my Brethren, it is said, in substance, that the troublesome question for the State is that it failed to show by any corroborating evidence that appellant's peculations took place within the period of limitation by any testimony other than the confession.

It is shown that appellant was for many years in charge of these apartments, and many of them were occupied from time to time; that he received and disbursed sums of money, and was actively in charge thereof under orders of the court, such property being in litigation. True it is that the amounts of receipts and disbursements had to be taken from appellant's reports, he being in charge thereof, and it does appear therefrom that he had received within the period of limitation about the sum of

$6,300.00, of which he had made no payment, such being received in the last twelve months of his receivership, and was the balance of receipts over disbursements during such period. Such report showed that in each and every month in the year previous to the filing of such report that appellant had received more than $50.00 above his disbursements, and all of which balances he failed to account for. It is shown by such report, as well as the trial court's order in the civil suit, that appellant owed to the owners of such apartments the sum of $17,782.20, which he was ordered to pay, and which it is shown he never did pay.

It is further shown by the testimony of F. M. Bralley, an attorney in the civil suit, that: "I had requested him (appellant) to make a detailed accounting of his receipts and disbursements during the period of time he was serving as Receiver, and after he struck his balance on his books that I would want to attach to it either a letter from the bank or a certificate from the bank, showing the balance in the bank to be the same as that shown on his report. The letter from the bank or the certificate from the bank was lacking. That certificate was supposed to reflect the cash in the bank being the same amount as the balance on the report. He did not attach that to the report that he gave me. I talked to him about that, and he told me that he couldn't furnish me that. He said he didn't have the money; that he was sorry. He said the money had been spent; that he had spent it. He did not say how he had spent it or where he had spent it. In our discussion he said that he spent the money and just didn't have it, that was all. As to how much money the defendant told me he was short at that time—well, all of the balance that was shown by the report."

It seems to the writer that quite a considerable shortage has been shown in appellant's accounts by means of this report; that by letter as well as word of mouth he has admitted the same, three times in all has such been shown, and that a large portion of such shortage is shown to have taken place within less than three years prior to the filing of the indictment.

I think the State's motion herein should be granted and this cause should be affirmed. Thus thinking, I respectfully enter my dissent herein.