T. E. Massey v. State.

No. 24556. February 15, 1950.

*Blalock & Hardage, Bryan Blalock,* Texarkana, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

McCall was the owner of a frame building situated just outside the city limits of the city of Texarkana. Appellant operated Burkhalter's Drive-in Cafe in the building, and owned the furniture and fixtures. McCall had leased the building originally to Rice, who assigned the lease to Treadway, who, in turn, assigned to Chapman. Chapman had then assigned the lease to appellant and sold him the furniture and fixtures for $2,000—that is, $250 cash and a note for $1,750. Appellant obtained a fire insurance policy on the furniture and fixtures for $2,000, with loss payable to Chapman. Appellant acquired the cafe some time in September, 1948, and endeavored to secure a license to sell beer therein. Being unable to secure the license, he offered to sell to Mrs. Bell, an employee of the cafe, for the same amount and under the same conditions that he had purchased the cafe. Mrs. Bell agreed to buy provided a license to sell beer could be obtained. A license was refused her and the deal was not consummated. Appellant operated the cafe until about the 15th day of October, or four or five days before the fire, at which time he closed up the business, realizing he could not make a success of it without a license to sell beer. At that time he owed the $1,750 to Chapman and a month's rent of $50 to McCall. Up until a few days before the cafe was closed, appel-

lant lived in the building. About that time and while negotiating the sale to Mrs. Bell, appellant moved from the building and rented a room in the city. This is the fact situation existing at the time of the fire on October 20, 1948.

Scott, a patrolman in the city of Texarkana, discovered the cafe on fire, as he says, "around 2 or 2:30 . . . . . somewhere up in the morning." He was not more specific about the exact time. At that time, he testified, "the fire was burning out the left side of the building from the front, the east side." He reported the fire to the fire department.

Benjamin, chief of the fire department, testified that it was "sometime after 3 o'clock in the morning" when the fire department arrived at the scene of the fire and that when he got there "the entire rear of the Drive-in had burned . . . . . . . The fire was in the back of the building when I got there."

Evans, a highway patrolman, was present at the fire, and some four or five days thereafter he took some pictures of the burned premises, as to which he testified:

"I don't know whether the debris had been cleared off the floor,—there wasn't anything left on the floor except just in this condition here. When I went out to take the pictures the floor appeared to have been burned, some of it,—trails or sections had been burned in the floor, and these pictures pretty well show that."

The record before us does not reflect that the pictures referred to were introduced in evidence.

Smith, a special agent of the National Board of Fire Underwriters, visited the scene of the fire on the 7th or 8th of November, 1948, or about eighteen days after the fire, and made an investigation to determine its origin. Whether the predicate offered for the testimony of this witness was sufficient to qualify him as an expert in such matters is not before us, inasmuch as no bill of exception has been brought forward complaining of his testimony because of an insufficient predicate. According to Smith's testimony, the kitchen, or rear, portion of the building was practically burned away; the front of the building, though badly burned, was still standing, the floor of which was burned in spots or trails. We quote from his testimony, as follows:

"I am familiar with the type of burning caused by inflammable liquids on the floor and have seen numerous instances of

it. If you have asphalt drops, composition roof drops, it would be in drops; if a liquid was spread on the floor that spreads out more or less in a trail. The liquid will go to a certain line or spot and that will be irregular. The liquid burns, alcohol, whiskey or anything, will burn to the edge, and where the floor is not saturated with the liquid it will not burn. It might burn later but the floor saturated by the liquid will burn first. As to whether the floor will burn in that area, it will depend on the type of liquid used and also on how much resin was in the pine, and whether or not burning continued after the accelerant had *has* burned itself out.

"In this instance, roofing material didn't drop. A few pieces of celotex had burned or dropped but it makes a different mark from liquid; but those showing there, I could not say the exact volitive (sic) used but I can describe the condition of the floor. The interior of the building was 20 by 30 feet, and in the north end was a double front door with windows on either side; and about eleven feet from the rear wall of the building there was a curved counter where some six or seven stools were, and on either side of the building, the west and east side, were booths, some three or four double booths, table between seats. Where these booths were, on that portion of the floor there were no trails at all, trails where I speak of where there was a curve or spotted burning. Right at the common wall between this building and the kitchen that has burned away completely, that spotted and trailed burning occurred on up in the front and the front door,—it was charred on the floor. There would be a section of perfect uncharred floor and then an area of charred floor with irregular outline. I noticed where some of the celotex had dropped and that was a distinct line and you could tell the difference, but it was burned all over it. There *was* areas all over where the floor was not burned but spotted around it, up in the front in the middle of the building but not where the booths were or had been. Between the booths and the other side of the building there was an open space where customers would walk or dance. As to whether there was any furniture or equipment or anything along there that would have burned and made those spots,—I wasn't there immediately prior to the fire or after it, but the last time I was in there three years before the fire there was an open area and the booths on the side and counter."

Witness was then asked to state:

". . whether or not in your opinion these charred or burned

places in the floor in their irregular pattern were caused by some volitive (sic) fluid having been put on there and ignited."

He replied as follows:

"Yes, I would say that there had been not only volitive (sic) fluid but some accelerated fluid was apparently on that floor in an irregular pattern. As to how it got ignited I don't know but it apparently burned in spots."

(Parenthesis, supplied in foregoing quoted testimony.)

To connect appellant with the fire the state relied upon the following:

The witness Birtcher, a taxicab driver in Texarkana, testified that around 2:30 o'clock on the morning of October 20, 1948, in answer to a call, he picked up appellant and a woman at the Olympic Cafe. He first drove the woman to her house. At appellant's direction he then took him to the Burkhalter Drive-In Cafe, where appellant got out of the cab. After paying his cab fare, he was seen by Birchter to go "down by the side of the building on the east side next to the creek." Witness then drove away, returning to his cab stand, where he picked up other passengers. As he was driving them to their destination, he heard the siren of a fire truck.

The witness Brooks, another passenger, or friend, who had been riding in the taxicab all this time, corroborated the witness Birchter. The witness Claudie Phillips, a waitress in the Olympic Cafe, who called the taxicab for appellant, also corroborated Birchter as to appellant and the woman getting into the taxicab and as to the time thereof.

Appellant's defense was that of alibi. He testified that about eleven o'clock on the night of the fire Bratton, a taxicab driver for the Yellow Cab Company, picked up a woman and him at the corner of 6th and Texas Streets in the city of Texarkana and carried them to a tourist camp; that upon registering there and signing "T. E. Massey and wife" on the registration card he was assigned a room; that he and the woman remained there until after four o'clock the next morning, at which time they left and went to a cafe about a block and a half from the tourist camp and called the Yellow Cab Company for a cab. The call was answered by Elrod, the driver, who carried him and the woman to their respective places of residence.

Appellant denied the testimony of the state's witnesses and that he burned or had any connection with the burning of the building.

The witnesses Bratton and Elrod corroborated appellant's testimony in that he and the woman were taken to and from the tourist camp, as testified by him. The clerk at the tourist camp who took the registration and assigned the room identified the registration card as having been signed in his presence. He was unable, however, to identify the appellant as the person who signed the card. The state did not challenge the signature or the registration card as being in appellant's handwriting.

The jury rejected appellant's defense and convicted him of the crime of arson in the wilful burning of the house of McCall, and assessed his punishment at five years in the penitentiary.

This extended statement of the facts is deemed necessary in view of appellant's insistence that the facts are insufficient to support the conviction—which question he presents by several bills of exception, in determining the merits of which it is pertinent to refer to certain well-established legal principles.

The essential element of the crime of arson is the wilful burning of the building, without which that crime has not been committed. Proof, merely, that the building burned is not sufficient to establish that fact. Duncan v. State, 109 Tex. Cr. R. 668, 7 S. W. 2d 79. Nor is the fact that the burning was done by the accused to be taken for granted simply from the circumstance that he could have done it. 4 Tex. Jur., p. 824, Sec. 23. There must be some proof, direct or circumstantial, showing the wilful burning of the building by someone and the criminal connection of the accused therewith, which is the corpus delicti of the crime of arson. Duncan v. State, supra; Zepeda v. State, 139 Tex. Cr. R. 258, 139 S. W. 2d 820.

That appellant had a motive to burn the building is shown by the fact that the business was not a success. He had endeavored to sell the business, and could not. But by burning the building he might assure the regaining of the $250 cash he had put into the business. Appellant was at and in the vicinity of the building a short time before the fire was discovered; he had the opportunity to burn the building.

But motive and opportunity, alone, are not sufficient to establish that he set fire to the building. There must be some tes-

timony showing that the fire was of incendiary origin—that is, that someone wilfully burned the building; proof, merely, that the building burned is not sufficient to so show.

To meet this burden, the state relies upon the testimony of the witness Smith and his opinion, based upon an examination of the burned premises some eighteen days after the fire, that some "volitive" and "accelerated" fluid had been on the floor of the building in an irregular pattern. The witness did not explain what he meant by the terms, "volitive" and "accelerated." His testimony as a whole indicates that he intended the word, "volatile," instead of "volitive." In any event, the testimony is susceptible of the construction that it was his opinion that some quick vaporizing and inflammable fluid had been placed on the floor of the burned building.

It appears undisputed that the fire originated in the kitchen, or rear, of the building. It did not originate in that portion of the building where Smith found the evidence that an inflammable liquid had been used. There is no testimony showing that at the time of the fire any person detected, by smell or otherwise, that any inflammable fluid had been used in the building or that portion where the fire originated.

We have searched this record in vain for any testimony showing that the burned building was in the same condition at the time Smith made his examination as it was immediately after the fire. For the burned places on the floor, as described by the witness and upon which he based his opinion, to be of any probative value they must of necessity have been the result of the fire upon which this prosecution is based.

It is a rule applicable to circumstantial evidence that where a relevant, competent, and material fact is in possession of the state and not disclosed it will not be resolved against the accused. 18 Tex. Jur., p. 440, Sec. 318.

Here, the record reflects that the fire marshal and representatives of the insurance company interrogated the accused after the fire, and that the chief of the fire department testified as a witness in the case, yet none of them were interrogated relative to these matters which were very material to the state's case. It is apparent, therefore, that the state was in position to show, if such was the case, that the burned premises were in the same condition at the time Smith made his examination as they were immediately after the fire. The state's failure to make

such proof is a circumstance against it and not against the accused.

However strong the inference may be that some inflammable fluid had been poured in an irregular pattern on the floor of the building prior to the time of the fire, that inference is not as strong as, and must yield to, the presumption of innocence which follows the accused throughout the trial of every criminal case.

Finally, then, the state's case depends upon the indulgence of the inference that inflammable liquids were poured on the floor of the building just before the fire, and upon that inference the further inference is indulged that such showed an incendiary or wilful burning of the building. Thus the state's case is entirely circumstantial, resting upon an inference based upon an inference. This may not be done. 18 Tex. Jur., p. 16, Sec. 5. Presumptions of fact are not indulged against an accused. East v. State, 146 Tex. Cr. R. 396, 175 S. W. 2d 603.

The state's testimony raises a strong suspicion or probability of appellant's guilt, but such does not constitute proof of his guilt.

Believing the evidence insufficient to support the conviction, the judgment is reversed and the cause remanded.

Opinion approved by the court.