Henry BAUGH, Appellant,

v.

The STATE of Texas, Appellee.

Lynn M. BAUGH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–85–236–CR, 3–85–237–CR.

Court of Appeals of Texas,
Austin.

Feb. 11, 1987.

Rehearing Denied in No. 3–85–236–CR
March 18, 1987.

Walter C. Prentice, Austin, for appellants.

Charles B. Lance, Dist. Atty., Cameron, Gerald M. Brown, Carroll, Brown & Hibbs, Temple, of counsel, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

BRADY, Justice.

Appellants Henry and Lynn M. Baugh, husband and wife, appeal from their judgment of conviction for arson. After the jury found both appellants guilty, the trial court imposed probated sentences of ten years. Appellants each argue two points of error. Both complain the trial court should have sustained preliminary motions to quash their indictments. They also challenge the sufficiency of the evidence to support their convictions. We will affirm the judgment of conviction of Henry Baugh and will reverse the judgment as to his spouse, Lynn Baugh.

On August 3, 1984, a fire completely destroyed appellants' rural home in Milam County. The home was insured, and the appellants subsequently received compensation for the loss from their insurance company. Although many firefighters appeared upon the scene during the fire, there were no witnesses to its ignition. The evidence indicating the fire was set intentionally was both direct and circum-

stantial, while the evidence linking the Baughs to the act touching off the blaze was wholly circumstantial.

The State's major witness was Charles R. Killingsworth, an expert in fire investigation employed by the State Fire Marshal's Office. Killingsworth stated that he conducted an investigation of the burn site. Although he could not testify precisely to the origin of the fire, he concluded it had been intentionally set. This opinion was based on several factors: 1) admissions made by the Baughs that valuables had been removed from the house before the fire; 2) the fact that he found few remnants of furniture or other possessions at the fire scene; 3) subsequent discovery of copious amounts of furniture and other possessions stored in a shed on the property; 4) that Mr. Baugh was on the property and awake at the time of the fire; 5) the fact that upon returning home and discovering the fire, Mrs. Baugh did not immediately investigate the safety of Mr. Baugh, but rather went to a telephone some distance away; and 6) evidence that the fire had been started with a flammable liquid.

Although the evidence linking the appellants to the fire is circumstantial, some of the proof demonstrating arson by way of a flammable liquid is quite direct. Killingsworth testified he found spalding marks in the concrete of the front porch and back patio. Spalding, explained the witness, is caused when a liquid accelerant is poured on the concrete and ignited. What happens is that some of the liquid will penetrate into the pores of the concrete and will expand rapidly when set aflame. The result is that the top layer of concrete will blow away, leaving open or raw concrete exposed. The presence of spalding marks on the concrete porches of the Baugh's residence demonstrated to him that someone had used gasoline or some other flammable liquid to start the fire.

Other aspects of the fire were also consistent with ignition by use of an accelerant. Firefighters on the scene testified the house burned down all at once. According to Killingsworth, this rapid and even burning is highly unusual. Normally, he explained, a non-incendiary residence fire will start at one location, burn upwards into the attic, and then proceed throughout the rest of the house. Here, the house burned evenly. Furthermore, the garage, separated from the house by a short walkway, was also completely "involved" with fire from the inside despite the fact that it had a dirt floor and was constructed of sheet metal over a wood frame. Because the fire was equal throughout the structure, Killingsworth stated an electrical origin for the fire would have been impossible. Other accidental sources such as butane gas were also discounted by that witness for the same reason.

In order to show the appellants were criminally responsible for the fire, the State presented circumstantial evidence of a plan to collect on the fire insurance. The primary evidence was that the Baughs had removed most of the furniture and personal possessions before the house was destroyed. Killingsworth testified his investigation of the fire scene failed to uncover vestiges of many items the Baughs claimed the house contained at the time of the fire. This observation was coupled with the discovery of a shed on the premises which, according to Killingsworth, contained "enough to furnish the house." Additionally, witnesses present at the fire scene testified they heard one of the couple's children state "it was a good thing they had gotten all the valuables out of the house."

There was also testimony concerning Henry Baugh's behavior at the fire scene. Henry Baugh was residing in a trailer approximately a half a mile from the fire, but despite the noise of the numerous sirens on emergency vehicles, he did not come to the fire scene until summoned. Furthermore, Killingsworth testified that Henry Baugh told him he was awake at the time of the fire.

Lynn Baugh's behavior was also unusual. Although the nearest telephone was about a mile away at a neighbor's house, upon returning home and discovering the fire, she went an extra mile back to

the town of Buckholts to summon help. Witnesses also testified that she seemed unconcerned at the loss of her home and was more interested in displaying photos of the fashion show she had just attended with her daughter.

The defense presented extensive evidence in an attempt to rebut the proof offered by the State. Through the testimony of William Colthorp, an engineer specializing in fire investigation, the defense challenged both the contention that the fire was intentionally set and that few furnishings were in the house at the time of the fire. Colthorp disputed that spalding was caused by accelerants, asserting instead that it was caused by pouring cold water on hot concrete. As proof of this contention, Colthorp related the results of an experiment performed on the Baugh's porch in which he was unable to cause spalding with gasoline but was successful when water was applied to the heated surface. This is significant because firefighter's testified 1200 gallons of water was put on the fire and it is clear the concrete was quite hot at that time. Although he was uncertain of the actual cause of the fire, this witness pointed to an electrical origin and displayed pieces of copper wire from the breaker box that had "arced" together. He did, however, admit that this arcing could have been caused by the fire. Colthorp also found traces of gasoline on one glass fragment taken from the fire scene.

Other testimony by Colthorp disputed the State's evidence that the fire scene was devoid of substantial furniture and other household possessions. Although Killingsworth claimed he had spent a day investigating the house, Colthorp showed pictures indicating much of the metal roof had not been removed. Colthorp also presented a series of detailed photographs documenting the remains of almost all the property the Baughs claimed the house contained. Significantly, the defense showed photographs of many items that Killingsworth specifically stated he failed to find at the scene, including a steel filing cabinet, a Zenith TV, food cans, a dining table, a staple gun, and several iron skillets, one of which was welded to the top of the electric range.

The defense also called witnesses to explain the furniture found in a shed on the ranch. According to the testimony of the Baughs, the items in the shed were pieces of old furniture they were storing until they could be re-upholstered. An upholsterer testified that he recovered several of the items for the Baughs some time after the fire. Additionally, a boarder who was staying with the Baughs at the time of the fire stated he saw no furniture moved out of the house in the two months he stayed there prior to the fire.

Further testimony revealed that Henry Baugh stayed in the trailer because it was air conditioned. Defense witnesses also stated that Henry Baugh was on some sort of medication the night of the fire and was asleep when summoned to the scene. The trailer was located approximately a half a mile away from the Baugh home and the house was not visible from it. Lynn Baugh stated that it was because she knew her husband was staying in the trailer that she did not investigate his safety before calling the fire department.

In rebuttal the State presented evidence that, at the time of the fire, the Baugh's bank accounts at two banks were at very low levels. This evidence was met by Henry Baugh's testimony that accounts at other banks were ample to meet their needs. The State also showed that the claim filed on their insurance company was an amount almost double the value for which the property was appraised at on the county property tax rolls.

At the close of the evidence the Baughs were convicted by the jury of arson under Tex.Pen.Code Ann. § 28.02 (1986). The relevant portion of that section provides:

> (a) A person commits an offense if he starts a fire or causes an explosion with intent to destroy or damage any building, habitation, or vehicle: ...
>
> (2) knowing that it is insured against damage or destruction; ...

These statutory elements must be demonstrated by "some proof, direct or circumstantial, showing the willful burning of the building by someone and the criminal con-

nection of the accused therewith." *Massey v. State,* 154 Tex.Cr.R. 263, 226 S.W.2d 856, 859 (1950). Appellants complain there was insufficient evidence to support their convictions.

■ The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the verdict, a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979). In cases relying on circumstantial evidence, this standard is applied such that the State must exclude all reasonable hypotheses other than the guilt of the accused; if the evidence viewed in the light most favorable to the verdict reasonably supports an inference or hypothesis other than guilt, a finding of guilt beyond a reasonable doubt is not a rational finding. *Carlsen v. State,* 654 S.W.2d 444, 446 (Tex.Cr.App.1983).

■ In this case, experts from both sides testified concerning the intentional origin of the fire. From the evidence detailed above, in particular the conclusions of the experts and the testimony concerning the spald marks, a rational jury could have concluded the fire was set intentionally, we find the evidence sufficient to support that finding. However, under *Massey, supra,* there must also be evidence showing the accused was criminally responsible for the fire.

■ The principal evidence demonstrating Henry Baugh's connection with the fire was the alleged removal of possessions before the fire, Henry Baugh's presence on the property, and his failure to come to the scene until summoned. This evidence was strongly controverted by evidence presented by the defense. While the defense presented compelling evidence concerning the presence of furnishings in the house and the reasonableness of Henry Baugh's failure to respond when sirens signaled an emergency, this Court cannot substitute its judgment on the weight and credibility of evidence for that of the jury. *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Cr.App.

1978); *Limuel v. State,* 568 S.W.2d 309, 311 (Tex.Cr.App.1978). Hence, viewing the evidence in the light most favorable to the verdict, we must assume the jury concluded the house was emptied of valuables and that Henry Baugh was awake at the time the sirens converged on his property. We can conceive of no other reasonable hypothesis to be drawn from these facts other than a plan to burn the house and a desire not to be associated with the subsequent blaze. Because a reasonable jury could have concluded he was responsible, we find there was sufficient evidence to support Henry Baugh's conviction for arson.

The evidence demonstrating a criminal connection of Lynn Baugh is not so conclusive. The primary evidence showing her responsibility for the fire or complicity in its ignition is her failure to ascertain whether her husband was safe before seeking a telephone, her failure to seek the nearest telephone, her unconcerned behavior at the fire scene, and the removal of possessions. The uncontroverted evidence showed the nearest telephone was at a neighbor's house about a mile away. The phone she did reach was in the town of Buckholts only approximately a mile farther. Given the fact that the neighbor's house was set back off of the main road and that a certain source of communication existed only a little farther away, a reasonable explanation exists for that conduct other than complicity in the fire.

■ Nor does the other evidence support only an inference of guilt. It was uncontroverted that Henry Baugh typically slept in the air conditioned trailer, thus, it is reasonable that she did not fear for his safety. Although most people might display more dismay at the fire scene than she reputedly did, this reaction alone is insufficient to show she was responsible for the fire for it is equally consistent with non-criminal conduct. Finally, the absence of possessions in the house may indicate a plan to burn the dwelling but there is no evidence she did more than acquiesce in this action. To be guilty as a party under Tex.Pen.Code Ann. § 7.01 (1986), there must be evidence she solicited, encouraged,

directed, aided, or attempted to aid Mr. Baugh. *See* Tex.Pen.Code Ann. § 7.02(a)(1) (1986). Here, there was no evidence she participated in the preparation and it is clear she was not present when the fire began. Viewing the evidence of a prior removal of valuables in its light most favorable to the verdict we find it does not exclude the reasonable hypothesis that she was unaware of her husband's intent to burn the house. We find the evidence insufficient to support her conviction.

■ The appellants also contend the trial court should have quashed their indictments because the allegations concerning the cause of the fire were too vague. The indictment alleged the fire was started by use of a flammable liquid. In *Castillo v. State*, 689 S.W.2d 443 (Tex.Cr.App.1984), it was held an indictment for arson was insufficiently precise where it merely alleged the appellant "started a fire." That court held the indictment must allege how the fire started and where. *Id.* at 449. Here, the indictments specifically state a cause of the fire and the location of the property. The actual substance used to ignite the fire is merely an evidentiary matter. It is well settled that an "indictment need not plead the evidence relied on by the state." *Phillips v. State*, 597 S.W.2d 929, 935 (Tex.Cr. App.1980). We hold the indictment was sufficient to give notice of the nature of the offense and to permit the preparation of an effective defense.

The judgment of the trial court as to appellant Henry Baugh in Cause No. 3–85–236–CR is affirmed. The judgment of conviction of Lynn M. Baugh in Cause No. 3–85–237–CR is hereby reversed and the judgment is reformed to show an acquittal.