# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00156-CR

**Thomas James Clemens, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 3040165, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Thomas Clemens was convicted of attempted arson of David Leibson's home. In three issues on appeal, Clemens argues that the evidence is legally and factually insufficient to support his conviction and that the district court erred in admitting the testimony of Sandra Budge, a criminalist for the State Fire Marshal, stating that various items found on Leibson's property contained gasoline. Because the evidence is legally insufficient to support the conviction, we will reverse the judgment of the district court and render a judgment of acquittal.

## BACKGROUND

Clemens was charged with attempted arson of a habitation. *See* Tex. Penal Code Ann. § 15.01(a) (West 2003), § 28.02 (West Supp. 2006). The indictment specified that:

> on or about the 17th day of January A.D. 2004, . . . [Clemens] did then and there, with the specific intent to commit the offense of arson of . . . a habitation, do an act,

to-wit: threw an incendiary device through the window of said habitation which device, a bottle of flammable liquid and a fuse was in the manner of its use or intended use was capable of causing death or serious bodily injury, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Clemens waived his right to a jury trial, and a bench trial was held.

The following information was revealed through testimony introduced at trial. Clemens and Leibson were roommates and resided at Leibson's house in Austin, Texas. After Clemens moved out of the house, he sued Leibson, claiming that Leibson had failed to return property to him. The court ordered Leibson to return various items to Clemens's attorney.

Some time after Clemens filed suit, Leibson's bedroom window was shattered at approximately midnight one evening in January 2004 while Leibson was in the room. Although the window shattered, the exterior screen remained intact, and whatever hit the window did not enter the house. After putting on his pants, Leibson ran outside to investigate and saw Clemens rushing to his car. Although Leibson admitted that it was dark, he testified that he recognized Clemens. Further, Leibson stated that Clemens yelled an expletive at him upon seeing him outside and that he recognized Clemens's voice. Leibson observed Clemens drive off and, subsequently, called the police to report the incident. Officer Rivera, the responding officer, testified that, after investigating, he could not determine what had hit the screen and window causing the window to break. However, he testified that Leibson identified Clemens as the party responsible for breaking the window.

Leibson's neighbor, Donna Doyle, testified that around nine o'clock the next morning, while she was cleaning her living room, she saw Clemens walk down Leibson's porch steps, cut through Leibson's yard, and walk by Leibson's car. Doyle testified that, although she had

2

never talked to him, she had seen Clemens at Leibson's house before and recognized him. Doyle stated that the next time she looked up from cleaning, approximately a minute later, she saw a fire underneath Leibson's car.

After seeing the fire, Doyle ran out of her house and over to Leibson's car. She testified that the fire had been set using beer bottles and a paper sack. In addition, she stated that she noticed that there was liquid inside the bottles but did not smell anything. She further testified that the fire intensified when she inadvertently knocked one of the bottles over while attempting to move the bottles away from the car's gas tank using her broom. After unsuccessfully attempting to extinguish the fire, Doyle then knocked on Leibson's front door and told him about the fire. Leibson was able to extinguish the fire and, subsequently, called the police. Leibson testified that, during his attempt to extinguish the fire, he noticed that the beer bottles had rags placed into the necks of the bottles and noticed that the area smelled like gasoline.

Officer Arturo Gonzalez responded to Leibson's call. He testified that, when he arrived at the scene, he could see that there had been a small fire underneath Leibson's car. He also observed several beer bottles that were filled with fluid and had rags stuffed into their necks. Officer Gonzalez testified he could smell gasoline in the area around the car.

While inspecting the remainder of the house, Leibson found another bottle on the ground near the window that had been broken the night before. Leibson testified that the bottle must have been the object that hit the exterior window screen and shattered his bedroom window. He further opined that the screen must have prevented the bottle from entering his house. Leibson informed Officer Gonzalez about the bottle, and Officer Gonzalez noticed that, like the bottles found

3

underneath Leibson's car, this bottle also contained liquid and had a rag stuffed into its neck. He further noticed that the rag was burned on both ends. Although he did not pick up the bottle to sniff it and admitted that he did not know for certain what was in the bottle, Officer Gonzalez testified that he could faintly smell gasoline near the bottle but that the smell was not as strong as it was near Leibson's car. Leibson also testified that he found yet another bottle on the other side of his house and that he could smell gasoline near that bottle as well.

Sandra Budge, a criminalist for the State Fire Marshal's arson laboratory, also testified at the trial. She stated that part of her job was to test evidence she received from law enforcement officials for the presence of ignitable liquid residue. She stated that, in conducting an analysis for this case, she tested three liquid samples collected from the beer bottles and concluded that each sample contained gasoline.

The district court found Clemens guilty of attempted arson, a second-degree felony, and assessed punishment at ten years' imprisonment, but the sentence was suspended to four years of community supervision. Clemens appeals the judgment of the district court.

## DISCUSSION

In his first issue on appeal, Clemens contends that the evidence is legally insufficient to support his conviction. In his second issue, Clemens argues that the evidence is factually insufficient. Alternatively, Clemens asserts that there is a material variance between the evidence offered at trial and the crime alleged in the indictment. In his third issue on appeal, Clemens argues that the district court erred in admitting Budge's testimony regarding tests she performed on the three liquid samples she received because no proof of chain of custody was offered. Because we conclude

4

that the evidence is legally insufficient to support Clemens's conviction, we need not address Clemens's second and third issues.

**The Evidence is Legally Insufficient**

Clemens argues that the evidence is insufficient to support his conviction for the crime of attempted arson of a habitation. Clemens insists that the evidence presented, if it proves anything, only proves that he placed all the beer bottles on Leibson's property on the morning of the fire and insists that proof of such an act does not prove the crime charged.

In determining whether evidence is legally sufficient to support a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt based on the evidence and reasonable inferences from the evidence. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). In making this determination, appellate courts consider all the evidence regardless of whether the evidence was properly or improperly admitted. *See Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). Further, appellate courts are not to re-evaluate the weight and credibility of the record evidence, nor should they substitute their judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). A fact-finder's verdict must not be disturbed unless it is found to be "irrational or unsupported by more than a 'mere modicum' of the evidence." *Epps v. State*, 811 S.W.2d 237, 240 (Tex. App.—Dallas 1991, no pet.) (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).

A person commits the offense of arson if he starts a fire or causes an explosion with intent to destroy certain types of property. Tex. Penal Code Ann. § 28.02. Arson of a habitation is a first-degree felony, and attempted arson of a habitation is a second-degree felony. *See id.* §§ 28.02 (arson of habitation is first-degree felony), 15.01(d) (West 2003) (attempt constitutes crime whose punishment level is one category lower than completed offense). A person is guilty of attempt if, with specific intent to commit an offense, "he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a). "Attempt" is more comprehensive than "intent," and it implies both a purpose and an actual effort to carry that purpose into execution. *Flores v. State*, 902 S.W.2d 618, 620 (Tex. App.—Austin 1995, pet. ref'd). Conviction for an attempted criminal offense does not require accomplishment of every act short of actual commission of the offense. *Id.* Specific intent to commit an offense means that the accused intended to bring about the offense in question. *Graves v. State*, 782 S.W.2d 5, 6 (Tex. App.—Dallas 1989, pet. ref'd). Intent may be inferred from circumstantial evidence. *Roane v. State*, 959 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

When the evidence is viewed in the light most favorable to the verdict, we believe that the evidence fails to establish beyond a reasonable doubt that Clemens was guilty of the crime of attempted arson of Leibson's house. In making its case against Clemens, the State was required to prove that Clemens committed an act "amounting to more than mere preparation" that tended but failed to effect the commission of the offense intended: setting Leibson's house on fire. *See* Tex. Penal Code Ann. §§ 15.01(a), 28.02. The act alleged in the indictment stated that Clemens "threw an incendiary device," specifically "a bottle of flammable liquid," "through the window" of

6

Leibson's house. *See Mosher v. State*, 901 S.W.2d 547, 549 n.1 (Tex. App.—El Paso 1995, no pet.) (fire investigator testified that Molotov cocktail is generally made from glass bottle containing flammable liquid with rag or paper wick in top part of bottle that is lit prior to bottle being thrown at intended target). Because the act was an essential element of the crime, the State had the burden of proving the act beyond a reasonable doubt. *See Short v. State*, 874 S.W.2d 666, 667 (Tex. Crim. App. 1994).

It should be noted that the evidence against Clemens is entirely circumstantial. *See Nicholson v. State*, 162 S.W.3d 389, 395 n.5 (Tex. App.—Beaumont 2005, pet. ref'd) ("Circumstantial evidence is 'direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven.'") (quoting *Cowan v. State*, 840 S.W.2d 435, 438 n.10 (Tex. Crim. App. 1992)). Although circumstantial evidence can be sufficient to support a defendant's conviction, *see Muttoni v. State*, 25 S.W.3d 300, 308 (Tex. App.—Austin 2000, no pet.), the State's case cannot impermissibly rest on inference upon inference, *see Massey v. State*, 226 S.W.2d 856, 860 (Tex. Crim. App. 1950).

At first glance, the evidence presented appears compelling that Clemens engaged in criminal activity on Leibson's property. However, upon closer examination, we are forced to conclude that insufficient evidence, circumstantial or otherwise, was presented demonstrating the sequence of events necessary to convict Clemens of the crime charged in the indictment. To find Clemens guilty of the offense charged, several inferences have to be made. First, based on the discovery of the bottle near the broken window, it must be inferred, without any direct evidence, that the bottle was the object thrown at the bedroom window and that it was on the ground during the

investigation by Officer Rivera the night of the incident but was overlooked. Further, based on the facts that the rag found in the bottle was burned at both ends and that Clemens was seen on the property the next day immediately prior to a fire being set underneath Leibson's car, it must be inferred that the rag was lit when the bottle was thrown. From these inferences, it must further be inferred that Clemens had the intent to commit the offense of arson of a habitation. This evidence requires an impermissible inference upon an inference and is insufficient to support a conviction for attempted arson of a habitation. *Compare Massey*, 226 S.W.2d at 860 (State's case rested on inference that flammable liquid was used and, from that inference, on inference that this showed willful burning), *with Taylor v. State*, 735 S.W.2d 930, 942 (Tex. App.—Dallas 1987), *aff'd*, *Arnold v. State*, 786 S.W.2d 295 (Tex. Crim. App. 1990) (no impermissible inference upon inference existed because there was testimony by firefighter that flammable agents had been used).

Even if the State's case does not require an impermissible inference upon an inference, the evidence presented at trial is still insufficient to prove attempted arson of a habitation. Although Leibson testified that he saw Clemens rushing to his car shortly after the window was broken, no witness observed Clemens throw any object at the window, nor is there any evidence, other than Clemens's mere presence, that he threw anything at the house. *See Mosher*, 901 S.W.2d at 549 (evidence sufficient where neighbor saw defendant throw Molotov cocktail at victim's house). Further, no evidence was introduced showing that the bottle found near the window was the object that shattered the bedroom window. There was no evidence indicating that the bottle had been damaged, in any way, as a result of its alleged collision with Leibson's house. Indeed, from the testimony, it seems that the bottle was not only unbroken but still contained some liquid, despite

8

being plugged with only a rag. In addition, there is no evidence establishing that the bottle found beneath the bedroom window was present on Leibson's property during the crucial time between when the window was shattered and the next morning when the fire under the car was set. The only evidence concerning the bottle's location at this critical time is to the contrary: neither Leibson nor Officer Rivera saw a bottle when they searched the area around the window shortly after the window was broken. *Cf. id.* at 548 (broken remains of Molotov cocktail were discovered by victim shortly after she heard something hit her house). The bottle was not discovered until the next morning when the bottles under the car were discovered and another bottle was found near Leibson's house on the side opposite Leibson's bedroom. Finally, other than the testimony that the rag stuffed into the neck appeared burned on both ends, there is no evidence that the bottle was thrown at the house while lit. No evidence was introduced indicating that Leibson's house, window screen, or yard sustained any damage from fire. *Cf. id.* at 549 (garage door, front of house, brush, and grass in front of house sustained fire damage). The only evidence concerning such damage is to the contrary: Officer Gonzalez testified that Leibson's house had not sustained any fire damage. The evidence presented does not establish that the bottle found beneath Leibson's bedroom window was the object that was thrown at or shattered Leibson's window, nor does the evidence establish that the rag in the bottle's neck was lit when the bottle was thrown. The establishment of these facts by some evidence other than an impermissible inference upon an inference from other evidence was necessary to convict Clemens of the crime charged—the throwing of an incendiary device through Leibson's window with the intent to set fire to the house.

In light of the previous discussion, we must conclude that (1) the State's case impermissibly rested on inference upon inference and (2) Clemens's conviction for attempted arson

9

of a habitation is not supported by more than a mere modicum of the evidence. Accordingly, we conclude that the evidence is legally insufficient to support Clemens's conviction for the offense charged. Therefore, we sustain his first issue. Having sustained Clemens's first issue on appeal, we need not address Clemens's second and third issues.

## CONCLUSION

Because the evidence was insufficient to support Clemens's conviction, we reverse the judgment of the district court and render a judgment of acquittal. *See Wheeler v. State*, 35 S.W.3d 126, 131-32 (Tex. App.—Texarkana 2000, pet. ref'd).

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Waldrop

Reversed and Rendered

Filed: January 11, 2007

Do Not Publish