**Hurshell Dale WHEELER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–99–00057–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 21, 2000.

Decided Dec. 5, 2000.

**128**

Stanley L. Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

Marcus D. Taylor, Wood County District Atty., Quitman, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Hurshell Wheeler was convicted of arson,[1] enhanced as a habitual offender,[2] and was sentenced to imprisonment for thirty-five years. He appeals the judgment, challenging both the legal and factual sufficiency of the evidence to support his conviction. Regarding the legal sufficiency, Wheeler contends that: 1) the grand jury failed to exercise due diligence when it charged him with two counts of arson and alleged that the manner and means were unknown; 2) there was legally insufficient evidence of an "explosion" as set forth in both the indictment and the jury charge; and 3) the State failed to prove the corpus delicti of the offense of arson. Wheeler makes a general challenge to the factual sufficiency of the evidence to support his conviction.

Tex.Pen.Code Ann. § 28.02 (Vernon Supp.2000) provides, in pertinent part, as follows:

> (a) A person commits an offense [arson] if he starts a fire or causes an explosion with intent to destroy or damage:
>
> . . . .
>
> (2) any building, habitation, or vehicle:
>
> (A) knowing that it is within the limits of an incorporated city or town;
>
> . . . .

---

1. Tex.Pen.Code Ann. § 28.02 (Vernon Supp. 2000).

2. Tex.Pen.Code Ann. § 12.42(d) (Vernon Supp. 2000).

(E) knowing that it has located within it property belonging to another; . . . .

The indictment reads, in pertinent part, as follows:

[T]hat HURSHELL DALE WHEELER ... on or about the 5th day of December A.D. 1998 ... in [Wood County, Texas] did then and there, with intent to damage and destroy a habitation located at 121–1/2 Francis Street, Mineola, Wood County, Texas, intentionally and knowingly start a fire to and cause an explosion in, said habitation by manner and means unknown to the Grand Jury, knowing that said habitation had located within it property belonging to another, to-wit: dog, belonging to MISTY WILLIAMS.

... that HURSHELL DALE WHEELER ... on or about the 5th day of December A.D.1998 ... in [Wood County, Texas] did then and there, with intent to damage and destroy a habitation located at 121–1/2 Francis Street, Mineola, Wood County, Texas, intentionally and knowingly start a fire to and cause an explosion in, said habitation by manner and means unknown to the Grand Jury, knowing that said habitation was within the limits of an incorporated city and town, namely, Mineola, Texas.

The evidence showed that Tracey Albey resided at 120 Francis Street in Mineola. On Saturday evening, December 5, 1998, Albey went outside his residence to check his mailbox. He observed a vehicle exit from behind a fence next to 121–1/2 Francis Street, a garage apartment building, and go down Francis Street. Shortly after this vehicle departed, Albey saw a fire burning at the bottom of the garage apartment. He called 9–1–1 and went to warn his neighbors, the Joneses, who lived across the street. Albey described the vehicle he saw as a small car that made a "whining" sound, consistent with the sound of a standard transmission, and with a front running lamp that appeared to be damaged. The sound was significant to

Albey because he is an automobile mechanic who works on standard transmissions. The next day, Albey recognized the car when it returned to the scene of the fire. Although he could not discern the color of the vehicle when he first observed it the night before, Albey testified that the vehicle he saw on Sunday was the same one he saw leave the scene on Saturday night, and based on his observation on Sunday, the color of the vehicle was white. Albey wrote down the license number of the vehicle. He identified State's Exhibits 11 and 12 as photographs of this car.

June Sansom resided at 124 Francis Street. On the Saturday evening in question, she was outside her house and observed a small white vehicle depart from the area of 121–1/2 Francis Street. She went inside her house for a short time, then went back to the front door and saw flames shooting from the garage apartment. She called Tom Boyd, the owner of the property.

Becky Jones, her husband, and her son, Brandon Nichols, lived at 121 Francis Street. Jones knew that Wheeler and Misty Williams had moved into the garage apartment and had been living there for three or four months. On that Saturday evening, Jones was sitting in her living room when she heard the sound of glass breaking. When she looked outside, she saw flames coming from the apartment. Nichols attempted to put out the fire with water from a garden hose, but was unsuccessful. Jones had observed that during the time Wheeler lived in the apartment, he drove two different cars: an El Camino Ranchero and a small white car. On the day of the fire, around noon, she had seen him drive the white car to the apartment. Jones also testified that Albey had told her of the car he observed leaving the area shortly before the fire and described it to her as a red car. Albey denied that he described the car as red.

On the evening of the fire, Nichols had some friends at his house, and around 9:00

he was on his front porch when he observed a white car, similar to one Wheeler often drove, depart from the apartment. Shortly thereafter, he heard glass breaking and dogs barking, and when he went to the back door, he saw that the house behind them, 121–1/2 Francis Street, was in flames. Nichols spoke to Wheeler later that night after the fire had been extinguished and after Wheeler had spoken with the police. At the time of this conversation, Wheeler was driving a car "somewhat similar" to the one Nichols saw leaving the vicinity of the apartment shortly before the fire. Wheeler told Nichols that he was driving the car Nichols had seen earlier, and said that he had come by to pick up some items that Williams had set out for him. Wheeler also told Nichols that he did not start the fire, and he did not appear to Nichols to be upset or agitated about the fire.

Officer David Barkley was dispatched to the scene of the fire, arriving about 9:24 p.m. When he arrived, he noticed that the building was burning about halfway up the front. He went to the side of the house, and when he first got to that location, the inside of the garage apartment did not appear to be burning. He was standing about ten to fifteen feet away from the building when he noticed what appeared to him to be a "torch" of flame shoot through the house. Barkley tried to control the flames by using water from a garden hose. In five to seven minutes the fire department arrived, but by that time the building was completely engulfed by flames. Barkley remained on the scene, and after the fire had been extinguished, he discovered what were later identified as the remains of a Great Dane puppy, which had belonged to Williams and had died in the fire. Barkley also testified that the building was used as a habitation and was located within the corporate limits of the City of Mineola.

Barkley further testified that Wheeler arrived at the scene around 1:30 or 2:00 a.m. the night of the fire. Barkley questioned him regarding the fire. He testified that Wheeler did not seem agitated or upset regarding the fire. He further testified that records showed the license number of the small white car which Wheeler had been observed driving had been changed from 028ZYW to C92XHH.

Barkley testified that later that morning Williams came to the police station in Mineola and was upset and concerned for the safety of her two cats and a puppy that had been inside the burned house. Barkley testified that Williams told him she and Wheeler were roommates, they had argued over Wheeler's alleged involvement with another woman, and she had placed Wheeler's personal items outside the house in several bags. Barkley testified that Williams stated to him that Wheeler had threatened to burn down the house if she left him.[3]

Boyd testified that he was the owner of the property and had rented it to Williams. He also testified that he did not give anyone permission to start a fire or cause an explosion at the property.

Joe Madsen was the fire marshal for the City of Mineola, and had been trained to investigate and determine the cause and origin of fires. Based on his observations, and his training and experience, he determined that the fire had been deliberately set. Madsen further testified that trained dogs from the State Fire Marshal's office had alerted on certain areas at the scene of the fire for the presence of hydrocarbons and that samples of material at those locations had been taken and tested at the state laboratory in Austin. Madsen stated that even though the results of these tests did not show the presence of any "commercially available accelerant," he nonetheless believed the fire had been deliberately set.

Johnie Cheney, an employee of the State Fire Marshal's office, testified that he was

---

**3.** There was a hearsay objection to this testimony, but it was overruled. No appeal was made to this ruling, and no limiting instruction was requested at trial.

trained as both a firefighter and an investigator. He assisted the City of Mineola in its investigation of this fire. One of the tools he uses to investigate fires of suspicious origin is a trained dog, which alerts when it detects traces of flammable liquid. He testified that during his investigation, his dog alerted on several areas for the presence of flammable liquids, such as would be used to enhance the spread of a fire. He also testified that, through his training and experience, he determined that the fire was deliberately set. Cheney also stated that the fact the laboratory tests from the scene were negative did not change his opinion of the cause of the fire.

Jim Swindall is a chemist in the forensic laboratory for the State Fire Marshal's office and has training specific to fire investigations. He examined materials sent to him regarding this fire. His tests were negative as to the presence of any "commercially available, flammable combustible" substance. Swindall testified that there could be several reasons for such a negative finding: the fire accelerant could have been washed away during the fighting of the fire, the accelerant could have evaporated, or no accelerant had been used. He testified that a negative finding on laboratory tests does not necessarily rule out arson as the cause of a fire.

Wheeler testified that he and Williams had been living together at the garage apartment for six or seven months before the fire. On December 4, the night before the fire, he and Williams argued in a parking lot over his suspected involvement with another woman. Williams told Wheeler to come by and pick up his personal property that she would leave in front of the house. Wheeler testified he went to the house twice on December 5, 1998. He first went there around noon to pick up his posses-

sions, which had been left out front. On that visit, he also kicked in the door of the house in order to retrieve other items belonging to him. The second time he went to the house was around dark, but he testified that he was just there for a minute in order to leave some beer for Williams. He also testified that on the night in question he was driving a small white car that belonged to his sister and that he often used his sister's car. Several days before the fire, the electricity had been turned off at the house because the bill had not been paid. Wheeler denied that he started the fire.

Williams testified that she lived with Wheeler, that they had a child together, and that on the night before the fire they had argued in the parking lot of a restaurant about Wheeler's involvement with her former best friend. She told Wheeler they were "finished" and that she was putting his things out front to be picked up. Although she admitted having previously given a sworn statement that Wheeler had threatened to burn down their house if she left him, she denied at trial that Wheeler had ever made that threat.[4]

Wheeler's nephew, Adam Wheeler, age thirteen, testified that he had been with Wheeler all day on the day of the fire and that his uncle did not start the fire.

 The standard of review in legal sufficiency challenges is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). If a reviewing court determines that the evidence is insufficient under the *Jackson* standard, it must render a

4. Prior to her testimony, on being advised by counsel that her testimony may put her in jeopardy of criminal prosecution for perjury, the trial court ordered that Williams be advised by her own attorney, appointed by the trial court for this purpose, as to the possible consequences of her testimony. At the con-

clusion of Williams' testimony, the trial court, outside the jury's presence, found sufficient probable cause that Williams had committed aggravated perjury, specifically finding probable cause that such felony had been committed in the court's presence, and ordered her arrested.

judgment of acquittal. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996).

 In a factual sufficiency review, the court of appeals views all of the evidence without the prism of in the light most favorable to the prosecution and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,* 922 S.W.2d at 129. The complete and correct standard to be followed by the court of appeals to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State,* 23 S.W.3d 1 (Tex.Crim.App. 2000). If the court of appeals finds factual insufficiency, it should vacate the conviction and remand the cause for a new trial. *Clewis,* 922 S.W.2d at 133–34.

 Wheeler initially challenges the legal sufficiency of the evidence with regard to the allegations of the indictment which state that he "intentionally and knowingly start[ed] a fire to and cause[d] an explosion" [in the habitation at 121–1/2 Francis Street, Mineola, Wood County, Texas] *by*

*manner and means unknown to the Grand Jury* . . . . (emphasis added). Citing the *Hicks* and *Matson* cases, he argues that no rational trier of fact could have found beyond a reasonable doubt that the State met its burden to prove that the manner and means were "unknown." The State contends that it met the requirements set forth in Wheeler's line of cases, but that even if it failed to do so, such cases are no longer controlling.

 In an arson prosecution, allegations of the manner and means of starting the fire are not required to invoke the trial court's jurisdiction. *Taylor v. State,* 735 S.W.2d 930, 943 (Tex.App.—Dallas 1987).[5] However, if the charging instrument alleges that the manner and means are unknown to the grand jury, the State must present proof of that allegation. This can be done in one of two ways. First, if the evidence at trial fails to establish such manner or means, a prima facie showing is made that the manner and means were unknown to the grand jury. Second, if the evidence at trial does establish such manner and means, then the State must prove that the grand jury used due diligence in attempting to ascertain such manner and means. *Hicks v. State,* 860 S.W.2d 419, 424–25 (Tex.Crim.App.1993); *Matson v. State,* 819 S.W.2d 839, 847 (Tex.Crim.App. 1991).[6]

---

**5.** Remanded by the Texas Court of Criminal Appeals in an unpublished opinion; opinion on remand, *Taylor v. State,* 763 S.W.2d 926 (Tex.App.—Dallas 1989), *rev'd on other grounds,* 786 S.W.2d 295 (Tex.Crim.App. 1990).

**6.** The parties have briefed the question of whether the *Matson* and *Hicks* line of cases is still valid law. In *Rosales v. State,* 4 S.W.3d 228, 230–31 (Tex.Crim.App.1999), appellant alleged legally insufficient evidence where the indictment charged appellant with killing the victim by stabbing her with a knife and striking her with a hard object "the exact nature of which is unknown to the grand jury." In the majority opinion, the court held that: 1) the prosecution satisfied the due diligence requirement when it proved through one of the grand juror's testimony that the grand jury was unable to find out what caused the

various injuries to the victim; 2) the jury was charged in the disjunctive (i.e., stabbing *or* striking with a hard object), which was permissible even though the indictment charged in the conjunctive and, therefore, proof that the victim was stabbed was sufficient; and 3) in light of the court's decision in *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997), which held that legal sufficiency of the evidence to support a conviction should be measured by the elements of the offense as defined by a hypothetically correct jury charge, "the rule in cases like *Hicks* is no longer viable. . . ." *Rosales,* 4 S.W.3d at 231. Justice Meyers, in his concurring opinion in *Rosales,* points out that either reasons 1) or 2) were sufficient to decide the case on appeal; therefore, that portion of the opinion purporting to overrule *Hicks* (and *Matson* ) was pure dicta. *Id.* at 234 (Meyers, J., concurring).

The State argues, alternatively, that: 1) the testimony of the grand jury foreperson sufficiently established due diligence; 2) there was no evidence of how the fire started, as opposed to its enhancement;[7] and 3) *Rosales*[8] overruled *Matson* and *Hicks*. The foreperson of the grand jury testified that the grand jury was unable to determine the manner and means of starting the fire or causing the explosion, despite the opportunity the jurors had of questioning the investigators in the case who testified before them. In *Taylor*, the only witness to testify before the grand jury was the prosecutor, who testified regarding the reports of the investigators in that case, and who told the grand jurors that it could not be determined what item was used to ignite the fire. *Taylor*, 735 S.W.2d at 944. A grand juror testifying as to the prosecutor's testimony was held to be "satisfactory as providing sufficient facts to justify the 'unknown' allegation in the indictment." *Id.* at 946. We likewise hold that the foreperson's testimony in the present case is sufficient to show due diligence on the part of the grand jury. We overrule this issue.

 In his second issue on appeal, Wheeler challenges the legal sufficiency of the evidence to establish that an "explosion" occurred, as charged in the indictment. The indictment alleges that Wheeler "knowingly start[ed] a fire ... and cause[d] an *explosion*" (emphasis added) in the habitation at 121–1/2 Francis Street. Citing case law definitions of "explosion," and a definition of "flashover" found in a learned treatise, of which Wheeler asks us to take judicial notice, he contends that the State has produced legally insufficient evidence of the crime for which he was charged.

 We note first that the court's charge instructed the jury that "a person commits the offense of arson if the person starts a fire *or* causes an explosion with intent to destroy or damage any habitation knowing that it has located within it property belonging to another" and that "a person commits the offense of arson if the person starts a fire *or* causes an explosion with intent to damage or destroy any habitation knowing that it is within the limits of an incorporated city or town." (Emphasis added.) In order to convict, the jury need only find beyond a reasonable doubt that Wheeler started a fire. It is unnecessary to also find that he caused an explosion. Although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Pine v. State*, 889 S.W.2d 625, 632 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). A conviction may lawfully be had through proof of only one or the other of alternative means alleged for committing the offense, whether they were joined with the conjunctive or the disjunctive. *Krebsbach v. State*, 962 S.W.2d 728, 731 (Tex.App.—Amarillo 1998, pet. ref'd). If the State alleges multiple means for the commission of the offense, allegation and proof of any of the means will be sufficient to support the conviction. *Carlock v. State*, 8 S.W.3d 717, 721 (Tex. App.—Waco 1999, no pet.). To convict, the jury must find beyond a reasonable doubt that Wheeler started a fire or caused an explosion. If the evidence is legally sufficient to find that he started a fire, the State need not establish that he caused an explosion. We find there is legally sufficient evidence that Wheeler started a fire, and we need not determine the legal sufficiency of the evidence to support the allegation that he caused an explosion. Nonetheless, we find that a rational trier of fact could have found beyond a reasonable doubt that Wheeler caused an explosion.

In view of our disposition of this issue on appeal, we express no opinion as to the effect of the *Rosales* opinion on *Matson* and *Hicks*.

7. *See Taylor*, 735 S.W.2d at 943–44.

8. See footnote 6.

Wheeler argues that the occurrence described as a "flashover" was not an "explosion." The Penal Code defines neither "explosion" nor "flashover." Wheeler cites cases purporting to define "explosion." However, those cases specifically decline to provide a definition of "explosion" applicable in all instances. In *Allen v. Manhattan Fire & Marine Ins. Co.*, 519 S.W.2d 706 (Tex.Civ.App.—El Paso 1975, no writ), cited by Wheeler, the court states:

> We are committed to the rule that the true meaning of exlosion [sic] in each particular case must be settled not by any fixed standard or accurate measurement but by the common experience and notions of men in matters of that sort, and further that the term in an insurance policy is to be construed in its popular sense, and as understood by ordinary men, and not by scientific men.

*Id.* at 709. *Allen* cites *Am. Cas. Co. of Reading, Pennsylvania v. Myrick*, 304 F.2d 179 (5th Cir.1962), also relied on by Wheeler, which states: "It appears that the Texas courts have not attempted the formulation of an all inclusive and fixed definition of the term 'explosion' but rather have sought to give it a meaning in accord with common understanding on a case-to-case basis." *Id.* at 182.

Wheeler also cites a publication, the "NATIONAL FIRE PROTECTION ASSOCIATION, GUIDE FOR FIRE AND EXPLOSION INVESTIGATORS, NFPA 921," for an authoritative definition of the term "flashover." Barkley, the Mineola policeman dispatched to the scene of the fire, testified that when he arrived at the location he observed flames on the exterior wall at the front of the building, but looking at the windows, he did not see any flames inside the residence at that time. However, when he went about midway down the residence's west side, he "observed flames shoot like a torch straight back through the house." Barkley later described what he observed on the west side of the house as "what appeared to be a torch—flame shoot straight back past all through those windows at the top of the residence." Jones and Nichols testified that they initially heard glass breaking in the garage apartment. This was described by Madsen, the fire marshal, as a "flashover."

While statements or definitions contained in learned treatises may be admissible through judicial notice, TEX. R.EVID. 803(18), we need not rule on the question in this instance because we agree with the State that words not defined by statute or the court's instructions are to be given their common, ordinary, or usual meanings. *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App.1996). Jurors are presumed to know and apply such common and ordinary meanings. *Roise v. State*, 7 S.W.3d 225, 242 (Tex.App.—Austin 1999, pet. ref'd). In *United States v. Ryan*, 153 F.3d 708 (8th Cir.1998), *cert. denied*, 526 U.S. 1064, 119 S.Ct. 1454, 143 L.Ed.2d 541 (1999), the court stated that "[a] *flashover* occurs when a fire in an area produces sufficient heat to *explosively* ignite all of the combustible material within the area." *Id.* at 710 (emphasis added). We find that the jury, applying the common and ordinary meaning of an undefined word, could have reasonably found that an "explosion" occurred.

Wheeler also contends that the State has failed to prove the corpus delicti of arson. The corpus delicti refers to evidence that a crime has been committed. To establish the corpus delicti of arson, the State must produce evidence that someone designedly set the fire. The evidence establishing the corpus delicti need not be direct, but may be circumstantial. While such evidence must relate to the corpus delicti, it need not be sufficient in itself to prove the offense; it need only render the corpus delicti more probable than it would be without the evidence. *Hough v. State*, 929 S.W.2d 484, 486 (Tex.App.—Texarkana 1996, pet. ref'd). The essential element of the crime of arson is the wilful burning of the building, without which the crime has not been committed. Proof merely that

the building burned is not sufficient to establish that fact. There must be some proof, direct or circumstantial, of the wilful burning of the building. *Massey v. State,* 154 Tex.Crim. 263, 226 S.W.2d 856, 859 (1950).

 Although this Court has held that proof of the corpus delicti of a crime does not require proof of the *identity* of the person,[9] *Massey* states that the criminal connection of the accused to the wilful burning is also part of the corpus delicti of the crime of arson. *Massey,* 226 S.W.2d at 859. We adhere to *Massey,* but also agree that proof of the accused's connection with the crime of arson may be used to establish proof of the corpus delicti of that crime. *See* 6A C.J.S. *Arson* § 49 (1975). Applying these standards in the instant case, we find the evidence is sufficient for reasonable-minded jurors to believe that the fire had been deliberately set and that the offense of arson had been committed by Wheeler.

The evidence shows that the electricity had been cut off to the building before the date of the fire, eliminating electrical problems as the cause of the fire. The expert witness testified that there was no evidence of a gas leak, eliminating another possible, nonintentional cause of the fire. *See Hough,* 929 S.W.2d at 487. There was evidence of "spalling,"[10] consistent with the use of an accelerant to enhance the spread of a fire. The fact that there was evidence of spalling in only one area of the

house, and the pattern of spalling at that location, were further indications of the incendiary origin and the area of origin of the fire. The hydrocarbon-sniffing dogs alerted on areas which could have contained fire-enhancing substances. There were no storms in the area at that time, eliminating lightning as a possible cause. The owner of the property gave no one permission to set off a fire or explosion. There was, in addition, testimony that Wheeler threatened to burn down the house, testimony of Wheeler's presence at the apartment shortly before the outbreak of the fire, and testimony of Wheeler's apparent indifference to the fire. His contention that the State failed to prove the corpus delicti of the offense of arson is overruled.

 Wheeler also challenges the factual sufficiency of the evidence to support the jury's verdict. In addition to the evidence set forth in this opinion, we note that Wheeler produced evidence to the contrary. He testified that even though he was present at the scene, he did not start the fire. Williams recanted her sworn testimony that Wheeler threatened to burn down the house if she left him. The trial judge, out of the presence of the jury, ordered Williams arrested for aggravated perjury, because in either her testimony at trial or in her previous sworn statement, she had made a false statement under oath regarding a material matter during or in connection with an official

---

9. *Hough v. State,* 929 S.W.2d 484, 486 (Tex. App.—Texarkana 1996, pet. ref'd).

10. Madsen testified as follows concerning "spalling":

Q. .... Looking at State's Exhibit No. 9, can you tell the jury what this photograph shows to you?

A. Yes. That right there, the center of the picture, the light-colored area, is what they call concrete spalling.

Q. What is that?

A. That is when there is excessive heat on a certain area of the concrete, it causes the concrete to—causes the vapor inside the concrete to explode. And so, the very top layer of

the concrete explodes off of the foundation itself.

Q. When you say the top layer, are you talking about the top six inches or what?

A. An eighth-inch layer of concrete.

Q. So just a very small—

A. Yes.

Q. Okay. But when you see that kind of area, what does that tell you, based on your experience as a trained fire investigator?

A. That tells me that that particular area had—that certain area had excessive heat on there, more than normal. And when water was applied to it, it caused expansion of the water vapor under that eighth-inch layer of concrete to explode.

proceeding. *See* Tex.Pen.Code Ann. § 37.03 (Vernon 1994). Wheeler's nephew also testified that Wheeler did not start the fire. As stated above, in our neutral review of all the evidence, both for and against a finding of Wheeler's guilt, we must determine whether the evidence of guilt is so obviously weak as to undermine our confidence in the jury's determination, or find that the evidence of Wheeler's guilt is "greatly outweighed" by evidence to the contrary. *See Johnson.* We further note that it is for the trier of fact, in this case the jury, to make a determination as to the credibility of the witnesses. "Although appellant did present evidence contradicting the incendiary origin of the fire and appellant's criminal connection to it, the jury could accept or reject any or all of the evidence presented at trial." *Fitts v. State,* 982 S.W.2d 175, 187 (Tex.App.— Houston [1st Dist.] 1998, pet. ref'd). The circumstantial evidence in this case could have led a rational jury to determine beyond a reasonable doubt that Wheeler set a fire or caused an explosion with the intent to damage or destroy, and such a finding is not contrary to the overwhelming weight of the evidence. *See Fitts,* 982 S.W.2d at 187. This point of error is overruled.

The judgment of the trial court is affirmed.