TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




ON MOTION FOR REHEARING








NO. 03-05-00156-CR






Thomas James Clemens, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 3040165, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Our opinion and judgment issued on January 11, 2007, are withdrawn, and the
following opinion is substituted. 

 Thomas Clemens was convicted of attempted arson of David Leibson's home. In
three issues on appeal, Clemens argues that the evidence is legally and factually insufficient to
support his conviction and that the district court erred in admitting the testimony of Sandra Budge,
a criminalist for the State Fire Marshal, stating that various items found on Leibson's property
contained gasoline. Because the evidence is legally insufficient to support the conviction, we will
reverse the judgment of the district court and render a judgment of acquittal. 


BACKGROUND


 Clemens was charged with attempted arson of a habitation. See Tex. Penal Code
Ann. § 15.01(a) (West 2003), § 28.02 (West Supp. 2006). The indictment specified that: 


on or about the 17th day of January A.D. 2004, . . . [Clemens] did then and there,
with the specific intent to commit the offense of arson of . . . a habitation, do an act,
to-wit: threw an incendiary device through the window of said habitation which
device, a bottle of flammable liquid and a fuse was in the manner of its use or
intended use was capable of causing death or serious bodily injury, which amounted
to more than mere preparation that tended but failed to effect the commission of the
offense intended. 


Clemens waived his right to a jury trial, and a bench trial was held. 

 The following information was revealed through testimony introduced at trial. 
Clemens and Leibson were roommates and resided at Leibson's house in Austin, Texas. After
Clemens moved out of the house, he sued Leibson, claiming that Leibson had failed to return
property to him. The court ordered Leibson to return various items to Clemens's attorney. 

 Some time after Clemens filed suit, Leibson's bedroom window was shattered at
approximately midnight one evening in January 2004 while Leibson was in the room. Although the
window shattered, the exterior screen remained intact, and whatever hit the window did not enter
the house. After putting on his pants, Leibson ran outside to investigate and saw Clemens rushing
to his car. Although Leibson admitted that it was dark, he testified that he recognized Clemens. 
Further, Leibson stated that Clemens yelled an expletive at him upon seeing him outside and that he
recognized Clemens's voice. Leibson observed Clemens drive off and, subsequently, called the
police to report the incident. Officer Rivera, the responding officer, testified that, after investigating,
he could not determine what had hit the screen and window causing the window to break. However,
he testified that Leibson identified Clemens as the party responsible for breaking the window. 

 Leibson's neighbor, Donna Doyle, testified that around nine o'clock the next
morning, while she was cleaning her living room, she saw Clemens walk down Leibson's porch
steps, cut through Leibson's yard, and walk by Leibson's car. Doyle testified that, although she had
never talked to him, she had seen Clemens at Leibson's house before and recognized him. Doyle
stated that the next time she looked up from cleaning, approximately a minute later, she saw a fire
underneath Leibson's car. 

 After seeing the fire, Doyle ran out of her house and over to Leibson's car. She
testified that the fire had been set using beer bottles and a paper sack. In addition, she stated that she
noticed that there was liquid inside the bottles but did not smell anything. She further testified that
the fire intensified when she inadvertently knocked one of the bottles over while attempting to move
the bottles away from the car's gas tank using her broom. After unsuccessfully attempting to
extinguish the fire, Doyle then knocked on Leibson's front door and told him about the fire. Leibson
was able to extinguish the fire and, subsequently, called the police. Leibson testified that, during his
attempt to extinguish the fire, he noticed that the beer bottles had rags placed into the necks of the
bottles and noticed that the area smelled like gasoline. 

 Officer Arturo Gonzalez responded to Leibson's call. He testified that, when he
arrived at the scene, he could see that there had been a small fire underneath Leibson's car. He also
observed several beer bottles that were filled with fluid and had rags stuffed into their necks. Officer
Gonzalez testified he could smell gasoline in the area around the car. 

 While inspecting the remainder of the house, Leibson found another bottle on the
ground near the window that had been broken the night before. Leibson testified that the bottle must
have been the object that hit the exterior window screen and shattered his bedroom window. He
further opined that the screen must have prevented the bottle from entering his house. Leibson
informed Officer Gonzalez about the bottle, and Officer Gonzalez noticed that, like the bottles found
underneath Leibson's car, this bottle also contained liquid and had a rag stuffed into its neck. He
further noticed that the rag was burned on both ends. Although he did not pick up the bottle to sniff
it and admitted that he did not know for certain what was in the bottle, Officer Gonzalez testified that
he could faintly smell gasoline near the bottle but that the smell was not as strong as it was near
Leibson's car. Leibson also testified that he found yet another bottle on the other side of his house
and that he could smell gasoline near that bottle as well. 

 Sandra Budge, a criminalist for the State Fire Marshal's arson laboratory, also
testified at the trial. She stated that part of her job was to test evidence she received from law
enforcement officials for the presence of ignitable liquid residue. She stated that, in conducting an
analysis for this case, she tested three liquid samples collected from the beer bottles and concluded
that each sample contained gasoline.

 The district court found Clemens guilty of attempted arson, a second-degree felony,
and assessed punishment at ten years' imprisonment, but the sentence was suspended to four years
of community supervision. Clemens appeals the judgment of the district court. 

 

DISCUSSION


 In his first issue on appeal, Clemens contends that the evidence is legally insufficient
to support his conviction. In his second issue, Clemens argues that the evidence is factually
insufficient. Alternatively, Clemens asserts that there is a material variance between the evidence
offered at trial and the crime alleged in the indictment. In his third issue on appeal, Clemens argues
that the district court erred in admitting Budge's testimony regarding tests she performed on the three
liquid samples she received because no proof of chain of custody was offered. Because we conclude
that the evidence is legally insufficient to support Clemens's conviction, we need not address
Clemens's second and third issues. 


The Evidence is Legally Insufficient

 Clemens argues that the evidence is insufficient to support his conviction for the
crime of attempted arson of a habitation. Clemens insists that the evidence presented, if it proves
anything, only proves that he placed all the beer bottles on Leibson's property on the morning of the
fire and insists that proof of such an act does not prove the crime charged. 

 In determining whether evidence is legally sufficient to support a conviction, we
consider all the evidence in the light most favorable to the verdict and determine whether a rational
trier of fact could have found the defendant guilty of all the elements of the offense beyond a
reasonable doubt based on the evidence and reasonable inferences from the evidence. Drichas v.
State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004). In making this determination, appellate courts consider all the evidence
regardless of whether the evidence was properly or improperly admitted. See Moff v. State, 131
S.W.3d 485, 488 (Tex. Crim. App. 2004). In reviewing the sufficiency, appellate courts are not to
re-evaluate the weight and credibility of the record evidence, nor should they substitute their
judgment for that of the fact-finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
A fact-finder's verdict must not be disturbed unless it is found to be "irrational or unsupported by
more than a 'mere modicum' of the evidence." Epps v. State, 811 S.W.2d 237, 240
(Tex. App.--Dallas 1991, no pet.) (quoting Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988)). 

 Not every fact has to support the defendant's guilt, but the cumulative effect of all
incriminating evidence must support the conviction. See Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993). Furthermore, a conviction can be based on circumstantial evidence alone. 
See Muttoni v. State, 25 S.W.3d 300, 308 (Tex. App.--Austin 2000, no pet.); see also Nicholson v.
State, 162 S.W.3d 389, 395 n.5 (Tex. App.--Beaumont 2005, pet. ref'd) ("Circumstantial evidence
is 'direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be
proven.'") (quoting Cowan v. State, 840 S.W.2d 435, 438 n.10 (Tex. Crim. App. 1992)). In addition,
the evidence may be legally sufficient despite the need for making multiple reasonable inferences
to support the conviction as long as "each inference is supported by the evidence presented at trial." 
Hooper v. State, No. PD-1325-05, 2007 Tex. Crim. App. LEXIS 102, * 15 (Tex. Crim. App. Jan.
31, 2007) (designated for publication). While reasonable inferences are permissible, a guilty verdict
may not be based on mere speculation. Id. ("Speculation is mere theorizing or guessing about the
possible meaning of facts and evidence presented"). 

 A person commits the offense of arson if he starts a fire or causes an explosion with
intent to destroy certain types of property. Tex. Penal Code Ann. § 28.02. Arson of a habitation is
a first-degree felony, and attempted arson of a habitation is a second-degree felony. See id. §§ 28.02
(arson of habitation is first-degree felony), 15.01(d) (West 2003) (attempt constitutes crime whose
punishment level is one category lower than completed offense). A person is guilty of attempt if,
with specific intent to commit an offense, "he does an act amounting to more than mere preparation
that tends but fails to effect the commission of the offense intended." Id. § 15.01(a). "Attempt" is
more comprehensive than "intent," and it implies both a purpose and an actual effort to carry that
purpose into execution. Flores v. State, 902 S.W.2d 618, 620 (Tex. App.--Austin 1995, pet. ref'd). 
Conviction for an attempted criminal offense does not require accomplishment of every act short of
actual commission of the offense. Id. Specific intent to commit an offense means that the accused
intended to bring about the offense in question. Graves v. State, 782 S.W.2d 5, 6
(Tex. App.--Dallas 1989, pet. ref'd). Intent may be inferred from circumstantial evidence. Roane
v. State, 959 S.W.2d 387, 389 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). 

 When the evidence is viewed in the light most favorable to the verdict, we believe
that the evidence fails to establish beyond a reasonable doubt that Clemens was guilty of the crime
of attempted arson of Leibson's house. In making its case against Clemens, the State was required
to prove that Clemens committed an act "amounting to more than mere preparation" that tended but
failed to effect the commission of the offense intended: setting Leibson's house on fire. See
Tex. Penal Code Ann. §§ 15.01(a), 28.02. The act alleged in the indictment stated that Clemens
"threw an incendiary device," specifically "a bottle of flammable liquid," "through the window" of
Leibson's house. See Mosher v. State, 901 S.W.2d 547, 549 n.1 (Tex. App.--El Paso 1995, no pet.)
(fire investigator testified that Molotov cocktail is generally made from glass bottle containing
flammable liquid with rag or paper wick in top part of bottle that is lit prior to bottle being thrown
at intended target). Because the act was an essential element of the crime, the State had the burden
of proving the act beyond a reasonable doubt. See Short v. State, 874 S.W.2d 666,
667 (Tex. Crim. App. 1994). 

 At first glance, the evidence presented appears compelling that Clemens engaged in
criminal activity on Leibson's property. However, upon closer examination, we are forced to
conclude that insufficient evidence, circumstantial or otherwise, was presented demonstrating the
sequence of events necessary to convict Clemens of the crime charged in the indictment. Although
Leibson testified that he saw Clemens rushing to his car shortly after the window was broken, no
witness observed Clemens throw any object at the window, nor is there any evidence, other than
Clemens's mere presence, that he threw anything at the house. See Mosher, 901 S.W.2d at 549
(evidence sufficient where neighbor saw defendant throw Molotov cocktail at victim's house). 
Further, no evidence was introduced showing that the bottle found near the window was the object
that shattered the bedroom window. There was no evidence indicating that the bottle had been
damaged, in any way, as a result of its alleged impact with Leibson's house. Indeed, from the
testimony, it seems that the bottle was not only unbroken but still contained some liquid, despite
being plugged with only a rag. In addition, there is no evidence establishing that the bottle found
beneath the bedroom window was present on Leibson's property during the crucial time between
when the window was shattered and the next morning when the fire under the car was set. The only
evidence concerning the bottle's location at this critical time is to the contrary: neither Leibson nor
Officer Rivera saw a bottle when they searched the area around the window shortly after the window
was broken. Cf. id. at 548 (broken remains of Molotov cocktail were discovered by victim shortly
after she heard something hit her house). The bottle was not discovered until the next morning when
the bottles under the car were discovered and another bottle was found near Leibson's house on the
side opposite Leibson's bedroom. Finally, other than the testimony that the rag stuffed into the neck
appeared burned on both ends, there is no evidence that the bottle was thrown at the house while lit. 
No evidence was introduced indicating that Leibson's house, window screen, or yard sustained any
damage from fire. Cf. id. at 549 (garage door, front of house, brush, and grass in front of house
sustained fire damage). The only evidence concerning such damage is to the contrary: Officer
Gonzalez testified that Leibson's house had not sustained any fire damage. 

 The evidence presented does not establish and it cannot reasonably be inferred from
this evidence that the bottle found beneath Leibson's bedroom window was the object that was
thrown at or shattered Leibson's window or that the rag in the bottle's neck was lit when the bottle
was thrown. The establishment of these facts by some evidence was necessary to convict Clemens
of the crime charged--the throwing of an incendiary device through Leibson's window with the
intent to set fire to the house. Given the suspicious behavior engaged in by Clements, it might be
possible to speculate that the bottle was the object thrown at the bedroom window, that the rag in
the bottle was lit when the bottle was thrown, and that the bottle was on the ground during the
investigation by Officer Rivera on the night of the incident but was overlooked. However, this type
of speculation cannot take the place of evidence and reasonable inferences based on the evidence
needed to support a conviction. 

 In light of the previous discussion, we must conclude that Clemens's conviction for
attempted arson of a habitation is not supported by more than a mere modicum of the evidence. 
Accordingly, we conclude that the evidence is legally insufficient to support Clemens's conviction
for the offense charged. Therefore, we sustain his first issue. Having sustained Clemens's first issue
on appeal, we need not address Clemens's second and third issues. 


CONCLUSION


 Because the evidence was insufficient to support Clemens's conviction, we reverse
the judgment of the district court and render a judgment of acquittal. See Wheeler v. State, 35
S.W.3d 126, 131-32 (Tex. App.--Texarkana 2000, pet. ref'd). 






 David Puryear, Justice


Before Chief Justice Law, Justices Puryear and Waldrop

Reversed and Rendered on Motion for Rehearing

Filed: March 9, 2007

Do Not Publish