In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00098-CV


______________________________




JIMMY BRANUM, Appellant



V.



T-WHOLESALE COMPANY, INC., THOMAS CONNOR, 


AND DENISS BENTZ, Appellees




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2004-306




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Jimmy Branum, the sole appellant in this case, has filed a motion seeking to dismiss his
appeal. Pursuant to Rule 42.1 of the Texas Rules of Appellate Procedure, his motion is granted. See
Tex. R. App. P. 42.1.

 We dismiss the appeal.


 Bailey C. Moseley

 Justice


Date Submitted: December 3, 2007 

Date Decided: December 4. 2007





hase of the trial.

 Testimony at trial presented the following: Manning failed to apply the brakes of the
eighteen-wheeler he was driving when he approached a lane of vehicles stopped for road
construction. The eighteen-wheeler collided with a Chevrolet Tahoe, killing the passenger. A total
of eight vehicles were involved.

 One witness, Michael Krebs, had been driving behind the eighteen-wheeler for some time
and testified the right wheels of the truck left the pavement to the right side of the road before he and
Manning had turned onto the highway where the accident took place. Another witness, Charles
La Bernz, was driving behind Krebs. Both witnesses testified they saw road construction signs as
far as 3,000 feet before the road construction. Krebs looked around the eighteen-wheeler and noticed
a line of vehicles stopped in their lane to allow traffic to pass through the construction zone in the
opposite direction. The witnesses did not see any signs that Manning applied the brakes or attempted
to slow down. The eighteen-wheeler continued at the same speed, until it collided with the last car
stopped in the line waiting on construction.

 Trooper Gerald Brown, the officer in charge of the investigation, testified Manning's eyes
were bloodshot. Sergeant Larry Matthews took Manning to the local hospital and testified Manning
dozed while on the way back to the accident scene. Lisa Le Doux, the hospital laboratory technician,
drew Manning's blood and testified that Manning appeared to fall asleep and snore while she was
processing the sample. The specimen Manning provided contained a cocaine metabolite.

 In his first point of error, Manning argues the evidence was legally insufficient because it
failed to establish the mental state of recklessness required for manslaughter. Manning contends the
evidence was only sufficient to support a finding of criminal negligence, there was a risk that he
should have recognized, but failed to, and his conviction should therefore be reformed to reflect a
conviction of criminally negligent homicide. 

 In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979). This calls on
the court to view the relevant evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must
evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or
inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S.
1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

 Under Tex. Pen. Code Ann. § 19.04 (Vernon 1994), a person commits the offense of
manslaughter if he recklessly causes the death of an individual. The jury was instructed that 

 A person acts "recklessly," or is "reckless," with respect to the result of his
conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the result will occur. The risk must be of such a nature and
degree that its disregard constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all circumstances, as viewed from the
actor's standpoint. 


 For a person to be deemed to be "reckless," there must actually be both a
substantial and an unjustifiable risk that the result complained of will occur and that
the person acting was actually aware of such risk and consciously disregarded it.


 Tex. Code Crim. Proc. Ann. art. 21.15 (Vernon 1989) provides that "[w]henever
recklessness . . . enters into or is a part or element of any offense, . . . [the] indictment in order to be
sufficient . . . must allege, with reasonable certainty, the act or acts relied upon to constitute
recklessness . . . ." Because the charge to the jury included several disjunctive means of
recklessness, "by failing to control a motor vehicle[,] or by failing to keep a proper lookout for
another motor vehicle, or by driving a motor vehicle without sufficient sleep[,] or by the
consumption of a controlled substance, . . ." the jury's verdict will not be reversed for insufficiency
if the evidence is sufficient regarding at least one of the alternatives. See Brooks v. State, 990
S.W.2d 278, 283 (Tex. Crim. App. 1999); Hathorn v. State, 848 S.W.2d 101, 108 (Tex. Crim. App.
1992); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); Wheeler v. State, 35 S.W.3d
126, 133 (Tex. App.-Texarkana 2000, no pet.).

 The trier of fact makes its determination of culpable mental state from all of the
circumstances and may make reasonable inferences from the acts, words, and conduct of the accused. 
See Arellano v. State, 54 S.W.3d 391, 393 (Tex. App.-Waco 2001, pet. ref'd) (sufficient evidence
of recklessness where visible signs of reduced speed and skid marks showed excessive speed);
Trepanier v. State, 940 S.W.2d 827, 830 (Tex. App.-Austin 1997, pet. ref'd) (sufficient evidence of
recklessness where driver moved onto shoulder to pass on the right); Rodriguez v. State, 834 S.W.2d
488, 490 (Tex. App.-Corpus Christi 1992, no pet.) (sufficient evidence of recklessness where
defendant had told officer she took the turn too quickly).

 There was evidence that Manning never applied the brakes, slowed down, or swerved when
approaching a lane of stopped traffic, that there were signs alerting drivers to road construction up
to 3,000 feet before the area where the traffic was stopped, and that drivers behind Manning were
able to see the stopped line of traffic ahead of the eighteen-wheeler. There was also evidence that
Manning swerved off the road before the accident, that his eyes were bloodshot shortly after the
accident, and that he fell asleep on the way from and at the hospital shortly after the accident. The
evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that
Manning was aware of and consciously disregarded the substantial and unjustifiable risk of failing
to control a motor vehicle, or of failing to keep a proper lookout for another motor vehicle, or of
driving a motor vehicle without sufficient sleep. Viewed in the light most favorable to the
prosecution, the evidence is legally sufficient to show that Manning was reckless on at least one of
the alternative means of recklessness alleged in the charge. Manning's first point of error is
overruled. 

 In his next two points of error, Manning contends the trial court erred when it allowed the
State to present evidence concerning the presence of a cocaine metabolite in Manning's blood. He
first argues the metabolite evidence was irrelevant, and its probative value, if any, was substantially
outweighed by its potential for unfair prejudice. 

 Tex. R. Evid. 402 provides that relevant evidence is generally admissible and irrelevant
evidence is inadmissible. Tex. R. Evid. 401 defines relevant evidence to mean "evidence having
any tendency to make the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence." 

 The Legislature has determined that blood-sample evidence of a controlled substance is
admissible, and therefore relevant and reliable, in criminal proceedings arising under Chapter 49 of
the Penal Code or under Section 106.041 of the Alcoholic Beverage Code. See Tex. Transp. Code
Ann. § 724.064 (Vernon 1999); see also Henderson v. State, 14 S.W.3d 409, 411 (Tex. App.-Austin
2000, no pet.). But Manning was not charged with an offense under Chapter 49 of the Penal Code
or under Section 106.041 of the Alcoholic Beverage Code. 

 Evidence of prior use of cocaine was relevant to the State's contention that the recklessness
was the result of the consumption of a controlled substance. However, as further discussed, the
evidence that the metabolite indicated causation is slight.

 Tex. R. Evid. 403 provides that evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, although the evidence is otherwise relevant. The trial court's determination under the
Rule 403 balancing test is only reversed for clear abuse of discretion. Mozon v. State, 991 S.W.2d
841, 847 (Tex. Crim. App. 1999). However, the reviewing court must measure the ruling against
relevant criteria. Id. The relevant criteria includes the following factors: (1) how compellingly the
evidence serves to make a fact of consequence more or less probable - a factor that is related to the
strength of the evidence; (2) the potential the evidence has to impress the jury in some irrational but
nevertheless indelible way; (3) the time the proponent will need to develop the evidence; and (4) the
force of the proponent's need for this evidence to prove a fact of consequence, which breaks down
into three subparts: (a) Does the proponent have other available evidence to establish the fact of
consequence that the evidence is relevant to show? (b) How strong is that other evidence? (c) Is the
fact of consequence related to an issue that is in dispute? See Montgomery v. State, 810 S.W.2d 372,
389-90 (Tex. Crim. App. 1990) (op. on reh'g).

 The testimony relevant to the blood sample results was as follows. Laticia Cole, a crime
laboratory technician, testified .15 mg/l of cocaine metabolite was found in Manning's blood sample. 
Cole testified that only ingesting cocaine or the metabolite would produce such a result. Glenn
Harrison, a supervisor in the crime laboratory, testified that cocaine is an illegal drug used for
euphoric effect. He explained that a metabolite is created as the body breaks down the cocaine
molecule, that the dissipation rate is the rate at which the cocaine leaves the body and is referred to
as a half-life (the clock time it takes for concentration of cocaine to decrease to one half its original
concentration), that the metabolite for cocaine has a different half-life than does cocaine, that the
half-life for the metabolite is 4.7 hours, and that age, but not weight, may affect the half-life. He also
testified someone with .15 mg/l of the metabolite would not display any of the effects of cocaine. 
When asked why, he testified the metabolite does not exhibit the effects of cocaine. He testified that
all the test result showed was that some time before the blood sample was taken, the person had
ingested cocaine, but that there would have been no effects of cocaine at the point when the blood
sample was taken. From the testimony of other witnesses, it was at least an hour and a half after the
accident that the blood sample was taken. (The accident occurred at two o'clock p.m., Manning was
transported to the hospital an hour after one witness arrived twenty to thirty minutes after the
accident, and Manning was returned to the scene of the accident the same day.). 

 The evidence was not compelling. There was no attempt to extrapolate the metabolite found
in the blood sample back to the time of the accident. While failure to extrapolate does not render
a specimen sample irrelevant, failure to present such evidence may be considered in weighing the
probative value of the specimen against its potential for unfair prejudice under Rule 403 and may
render the evidence insufficient to support the conviction. See Forte v. State, 707 S.W.2d 89 (Tex.
Crim. App. 1986); Owen v. State, 905 S.W.2d 434, 439 (Tex. App.-Waco 1995, pet. ref'd). The
evidence the expert did provide served only to confuse or mislead the jury. The expert testified that
at the level found in Manning's blood, one would not be experiencing the effects of cocaine. 
Although the expert testified the half-life of the metabolite is 4.7 hours, he also testified the
metabolite itself does not exhibit any of the effects of cocaine. He did not provide any information
to calculate when a metabolite is produced from the breakdown of cocaine in the body and did not
provide the half-life of cocaine. The expert gave no indication of how long after the effects of
cocaine wear off the metabolite would still be found in the blood. Although the State argued the jury
could infer Manning was more drowsy than he otherwise would have been because of the
consumption of cocaine at some time before the accident, there was no evidence as to when such
cocaine was consumed or that one becomes drowsy as the effects of cocaine wear off or as cocaine
is broken down in the body. Furthermore, although Trooper Brown testified Manning's eyes were
bloodshot, there was no testimony suggesting the use of cocaine causes one's eyes to be bloodshot. 
The strength of the evidence in making it more or less probable that Manning was reckless due to
the consumption of a controlled substance was extremely weak.

 There is considerable evidence indicating that the cause of the vehicular collision and
Manning's condition at the time of the collision was sleepiness and fatigue. One witness testified
he observed Manning's truck run off the edge of the highway on one side. The officer who
investigated the collision testified he noticed Manning's eyes were bloodshot and Manning was
standing there gazing down at the vehicle. The officer who took Manning to have his blood
specimen taken testified Manning was walking slowly and appeared sleepy. He also testified
Manning dozed off while sitting in the car on the way back from the hospital after the blood test. 
The chemistry supervisor at the Bellville General Hospital laboratory testified that Manning was
dozing while she was labeling his blood and that she could hear him snoring.

 Although the State may have been scientifically correct in concluding that after the
stimulation of the cocaine had worn off, Manning became fatigued, such consequences and effects
of cocaine are not within the common knowledge of the jurors, and without expert testimony
pointing out this connection, the jury was not in a position to determine such relevance. (1) If the State
had offered expert evidence on the effects of prior use of cocaine to show that the previous
consumption of the cocaine had brought about Manning's condition at the time of the collision, the
evidence would have been compelling, but such evidence was not developed.

 We next examine the unfair prejudicial effect of the evidence. There was a great potential
for the evidence to impress the jury in an irrational and indelible way. The trial judge concluded in
the record that he thought the testimony was undisputed that the experts said the cocaine metabolite
would have had no effect on Manning's ability to drive. The trial judge also stated there was no
evidence that linked the consumption of cocaine to increased drowsiness, and the trial court reacted
to the evidence by making a statement indicating the prejudicial effect of such evidence when the
judge made the following statement:

 This is a classic problem in that cocaine is in fact a flag for everybody . . . . I am sure
the jury's attention was attracted to that. And certainly public policy is clear, that it
dictates that people who operate vehicles should not be consuming alcohol or drugs. 
On the other hand, if whatever was in his system was not significant enough to have
caused any problems in operating a vehicle, then we would be doing an injustice by
allowing the jury to assume that, wouldn't we? . . . I know gauging my own reaction
when there was a suggestion that he had cocaine in his system, it made me upset. I
am sure the jury felt the same way. 

The statements by the trial court are not consistent with finding the probative value was not
substantially outweighed by the potential for unfair prejudice. 

 Developing and contesting the evidence regarding the cocaine metabolite consumed a
significant portion of the transcript and roughly one fifth of the evidence presented to the jury. The
introduction of the evidence required the examination of at least three witnesses, in addition to
various questions posed to the other six witnesses. 

 Finally, the evidence of the cocaine metabolite was related to a disputed issue, whether
Manning's consumption of a controlled substance caused him to be reckless at the time of the
accident, and the State had no other evidence to establish this fact of consequence. For example, no
evidence was introduced of cocaine found in the truck, and there were no witnesses to testify that
Manning had cocaine before driving the truck. There was also no evidence regarding the effects of
cocaine use that would have connected the State's other evidence, the bloodshot eyes, the swerving,
the fatigue, and the failure to apply the brakes, to cocaine use or to the presence of the cocaine
metabolite in Manning's blood sample. Therefore, the blood test result was not cumulative of other
evidence the jury had heard.

 The application of the factors to the evidence demonstrates that whatever probative value
existed, it was significantly outweighed by the prejudicial effect the evidence might have. 

 Although denying admissibility under Rule 403 is discretionary, we find the trial court in this
instance clearly abused that discretion. However, Tex. R. App. P. 44.2(b) provides that a
nonconstitutional error "that does not affect substantial rights must be disregarded." A criminal
conviction will not be overturned for nonconstitutional error if the appellate court, after examining
the record as a whole, has fair assurance that the error did not influence the jury, or influenced the
jury only slightly. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). This means the
appellate court should consider everything in the record, including testimony and physical evidence,
the nature of the evidence supporting the verdict, and the character of the error and its relationship
to other evidence. Id. In addition, the appellate court may consider the trial court's instructions to
the jury, the theories of the case the State and defendant have espoused, arguments to the jury, and
relevant voir dire. Id. at 444-45. 

 Because the cocaine metabolite evidence was the best evidence the State had to support the
controlled substance allegation, the error would have significantly contributed to a verdict based on
the consumption of a controlled substance. Because the trial court refused Manning's request to
remove the controlled substance alternative from the means of recklessness submitted to the jury,
it is impossible for us to determine on which alternative the verdict was based. While there was
evidence to support a verdict based on the other means alleged for Manning's recklessness, there is
no fair assurance the error did not influence the jury or influenced the jury only slightly. Manning's
point of error is sustained. 

 In his third issue, Manning contends the trial court erred in overruling his request for a
limiting instruction regarding the evidence disclosing the presence of a metabolite of cocaine in
Manning's blood. 

 As mentioned above, because the State did include consumption of a controlled substance
as one of the alternative means of Manning's recklessness and the court denied Manning's request
to remove it from the jury charge, the question of consumption was a fact of consequence, and the
evidence constituted same-transaction evidence. Because Camacho v. State, 864 S.W.2d 524, 532
(Tex. Crim. App. 1993), held that no limiting instruction was required for extraneous offenses that
were same-transaction evidence of the charged offense, the court did not err in denying Manning's
request for a limiting instruction. Manning's third point is overruled. 

 In his final point of error, Manning contends the court erred in allowing Lisa Schraeder, a
community supervision officer, to testify as a reputation witness at the punishment phase on the
grounds that she did not have substantial knowledge, that such knowledge was not obtained before
the date of the offense, that her testimony was based solely on knowledge of specific acts, and
because the fact that she did not discuss his reputation with anyone made her incompetent to testify
as a reputation witness. 

 Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2002) permits the state and
the defendant to offer evidence as to any matter the trial court deems relevant to sentencing,
including the defendant's general reputation, his character, and opinions regarding his character. The
trial court's decision to admit or exclude evidence at the punishment phase is subject to review for
an abuse of discretion. See Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).

 The requirement that the witness be substantially familiar with the defendant's reputation was
removed by amendment to Tex. R. Crim. Evid. 405(a) in 1990 and was not revived in Tex. R. Evid.
405(a). Nor is it necessary that the witness know of the defendant's reputation before the date of the
charged offense. Tex. R. Evid. 405(a) limits that requirement to reputation testimony at the
guilt/innocence stage of a criminal trial. Even before the current Rule 405(a), courts had found that
a reputation witness who had known of the defendant's reputation only since the charged offense and
arrest could testify at the penalty stage of a criminal trial. See Twine v. State, 475 S.W.2d 774 (Tex.
Crim. App. 1972); Chamberlain v. State, 453 S.W.2d 490, 494 (Tex. Crim. App. 1970). 

 Still, because the basis for the reputation hearsay exception is the reliability of the synthesis
of observations of the day-to-day activities of the accused, Wagner v. State, 687 S.W.2d 303, 313
(Tex. Crim. App. [Panel Op.] 1985) (op. on reh'g), a reputation witness must be familiar with the
defendant's reputation in some community. While it is not necessary to ask specifically about the
defendant's "reputation," Adanandus v. State, 866 S.W.2d 210, 226 (Tex. Crim. App. 1993), the
witness's testimony must be based on discussions with others concerning the defendant, or on
hearing others discuss the defendant's reputation, not just on personal knowledge. Turner v. State,
805 S.W.2d 423, 429 (Tex. Crim. App. 1991). 

 It has been held that discussions with other police officers are sufficient to qualify a witness
to testify regarding reputation. See id. at 423; Martin v. State, 449 S.W.2d 257, 260 (Tex. Crim.
App. 1970). However, the testimony may not be based solely on the charged offense, the defendant's
"rap sheet," or knowledge of specific acts. See Mitchell v. State, 524 S.W.2d 510, 512 (Tex. Crim.
App. 1975); Davis v. State, 831 S.W.2d 839, 844 (Tex. App.-Dallas 1992, pet. ref'd); see also
Wagner, 687 S.W.2d at 313-14 (error to allow reputation testimony based on allegation of one
specific act); Frison v. State, 473 S.W.2d 479 (Tex. Crim. App. 1971) (discussion of offense not
improper as basis as long as based on other discussions as well).

 Before the State began its case-in-chief in the penalty phase, defense counsel objected outside
the presence of the jury to the State's intention to call Schraeder as a reputation witness. On voir
dire, Schraeder testified she was familiar with Manning's reputation in the community. On cross-examination, responding to Manning's question requesting to know the basis of her reputation
testimony, Schraeder testified only as to her personal knowledge that Manning had appeared in court
for his conditional bond hearing smelling of alcohol and with a blood alcohol concentration of .07
and that she had received reports from supervising personnel that while he was on conditional bond,
Manning tested positive twice for cocaine use. At the conclusion of questioning on voir dire,
Manning objected to Schraeder as an opinion or reputation witness as there was insufficient predicate
laid. This objection was overruled. Schraeder testified Manning appeared at a bond hearing
smelling of alcohol and, after the court overruled Manning's renewed objection to the testimony, that
Manning's reputation for being peaceable and law-abiding was bad. 

 Manning argues the court abused its discretion in allowing Schraeder's reputation testimony
because the State failed to establish a proper predicate. Although Schraeder testified she was
familiar with Manning's poor reputation for being a peaceful and law-abiding citizen, the cross-examination by Manning revealed that this knowledge of reputation was based only on Schraeder's
one personal observation and two reports of specific acts. Although the State argues Schraeder
testified to discussions with the supervising personnel that faxed the test results, the record indicates
only that she received faxes reporting the results of the urine analysis tests. The test results are
evidence of specific acts, and while it is not error to consider specific acts in determining the
reputation of the accused, alone they cannot combine with personal knowledge to establish
Schraeder's competence to testify as to Manning's reputation. There is no evidence Schraeder
discussed Manning with anyone, official or civilian, within any community. Such a foundation is
insufficient to establish the proper predicate. Manning's question was broad enough that Schraeder
should have provided all of the bases for her familiarity with Manning's reputation. The State failed
to ask any questions on redirect examination that might have established the proper predicate if
Schraeder had failed to provide a complete answer. Therefore, the court abused its discretion in
allowing Schraeder to testify that Manning's reputation for being peaceable and law-abiding worked. 
Such error is subject to harm analysis. However, such analysis in this case is unnecessary, as the
initial point is dispositive of this case.

 The judgment of the trial court is reversed, and the cause is remanded for a new trial.




 Ben Z. Grant

 Justice


Date Submitted: March 1, 2002

Date Decided: June 19, 2002


Publish

1. When the "high" effect of the stimulation of cocaine wears off, the person goes through a
stage referred to as a "crash." After the "high" effect of cocaine is diminished, the user is subject to
fatigue, sleepiness, and lack of energy. See George W. Miller, Jr., M.D., The Cocaine Habit, 31(2)
Am. Fam. Physician 173, 173-176 (1985), LEXIS, Am. Fam. Physician.